610 So.2d 1369 (1992)
Donna C. FORESTER, as Personal Representative of the Estate of Stephen A. Forester, Appellant,
v.
NORMAN ROGER JEWELL & BROOKS INTERNATIONAL, INC., d/b/a Harpers Express, Appellees.
No. 91-3838.
District Court of Appeal of Florida, First District.
December 30, 1992.
Rehearing Denied February 5, 1993.
*1370 Lefferts L. Mabie, Jr., and Robert M. Loehr of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellant.
Patricia Guilday of Fuller, Johnson, & Farrell, Pensacola, for appellees.
ERVIN, Judge.
Appellant/plaintiff below, Donna C. Forester, as Personal Representative of the Estate of Stephen A. Forester, challenges a final judgment entered in favor of appellees/defendants, Norman Roger Jewell and Brooks International, Inc., d/b/a Harpers Express, in this wrongful death claim arising from an automobile accident. Forester contends that the trial court erred in admitting into evidence two reports apparently prepared by emergency medical technicians (EMTs) containing information indicating that two of the persons involved in the automobile accident were wearing seat belts. She asserts the documents were hearsay, for which the proper foundation for admission was not laid. We agree and *1371 therefore reverse and remand the case for new trial.
The accident which claimed Forester's life involved two separate collisions that occurred on a foggy morning prior to dawn on Highway 87 in Santa Rosa County. The first pertained to a head-on collision between a 1987 Toyota and a 1971 Datsun pickup truck. The Toyota, driven by Kenneth Evans and occupied by Byron Parker, struck Forester's Datsun while Evans was attempting to pass another vehicle. The second collision occurred two or three minutes later when a tractor-trailer truck driven by defendant Jewell, in his capacity as an employee of defendant Brooks International, collided with the rear of Forester's disabled truck. Thereafter, Forester was found dead at the scene; Evans, Parker, and Jewell survived.
Plaintiff's theory of negligence was that Forester had survived the first impact with Evans' Toyota and that the second collision with Jewell's tractor-trailer truck resulted in a head injury causing Forester's death. At trial plaintiff adduced eyewitness testimony showing that Evans was found lying on the ground outside his car following the first collision and that Forester's body was lying on the ground after the second collision, medical testimony reflecting that the trauma to Forester's head was a fatal injury, and investigative testimony stating that no blood or human tissue was found inside the cab of Forester's pickup truck. Plaintiff also presented testimony through Dr. William Fogarty, an expert in accident reconstruction, who opined that the bulk of the damage to the rear of Forester's cab was caused in the second collision with Jewell's truck, and that Forester received the fatal head injury during the second accident. Dr. Fogarty explained that the second collision caused Forester's pickup truck to turn and the driver's side door to open. Forester fell out the open door as the Datsun spun and his head struck the left rear wheel of the Datsun, leaving a large amount of blood in that area. Dr. Fogarty explained that the absence of blood inside the cab of the Datsun indicated that Forester's more serious injuries did not occur during the first impact, while he was inside the cab.
The defendants, on the other hand, postulated that Forester was killed during the first collision with Evans' Toyota. To prove their theory, they attempted to show that Evans and Parker were only able to survive the initial accident because they were seated in a more crashworthy vehicle than Forester, and because they were both wearing seat belts at that time. In support of this theory, they submitted their expert in accident reconstruction, Dr. Verne Roberts, who, in describing the effect of the first collision, explained that the force of the impact with Evans' car caused Forester's body to move forward into the steering wheel and dash, and that the cargo in the bed of Forester's pickup truck (a box of lead weighing 200 pounds, a roll of lead weighing 50 pounds, homemade anchors, boards, a hammer, etc.) also traveled forward, smashing into the cab, breaking the rear window, and striking Forester's head. Dr. Roberts also testified that the circular abrasions to Forester's chest were caused during the first impact when Forester collided with the steering wheel, and that it was possible that Forester's aorta had then ruptured.[1] He opined that, within a reasonable degree of engineering probability, the G-forces exerted upon Forester in the first collision exceeded human tolerance and were exacerbated by the sudden thrust of the cargo moving forward. He therefore attributed none of the serious injuries suffered by Forester to the second accident, but rather opined that Forester had died solely as a result of injuries received during the former.
Dr. Roberts also considered from his examination of the evidence that Forester remained part in and part out of the cab following the first collision, and that Forester's body kept the back of the cab on the driver's side from crushing to the front, as it had on the passenger's side. It was Dr. Roberts' opinion that Forester was completely *1372 ejected from the cab when the semitruck later struck his pickup.
On cross-examination, plaintiff's counsel asked Roberts if he was aware that Evans, the driver of the Toyota, not only had survived the accident, but worked in the landscape business following the accident. Roberts responded, "Yes. He's lucky he was wearing his seat belt, both of them. It makes a big difference." Roberts explained that Evans was able to withstand the crash because he was wearing a seat belt, which was a significant factor in his lack of any substantial injury. Plaintiff's counsel then asked, "And you base the fact that he had a seat belt on what, what basis?" to which Roberts responded, "Well, the lack of damage to the interior of his vehicle in front of him, the lack of any head print on his windshield. If he hadn't had a seat belt on, we'd see one of those big spider webs right there in front of his seated position, and it's not there." Counsel then asked Roberts whether he was aware that the highway patrol report indicated the contrary  that Evans was not wearing a seat belt, and Roberts replied, "Sure. That's what she said. Of course, the EMTs said he was. And the damage to his car  there's no way he could have avoided hitting the windshield if he hadn't been wearing his seat belt." When questioned whether he was cognizant of the fact that Evans had been thrown from the vehicle, Roberts answered that he did not think Evans had been ejected, but that he had unbuckled his belt and fallen through the open door.
During redirect examination of Dr. Roberts, defense counsel showed him defense exhibits 24 and 25 for identification, emergency medical services (EMS) patient reports prepared for Evans and Parker, which Roberts testified he had referred to in basing his opinion that the occupants of the Toyota were wearing seat belts. When defendants attempted to introduce the two EMS patient reports into evidence at the close of their case, plaintiff objected, stating there was no way of knowing if the person who completed the forms had personal knowledge concerning whether Evans and Parker were wearing seat belts, nor had defendants laid a proper predicate for admission of the documents into evidence. Defense counsel countered, arguing that the documents were admissible under the business records exception to the hearsay rule. Plaintiff's counsel continued to object, emphasizing the lack of personal knowledge by the unidentified person who prepared the forms and arguing that the defense had only established that the documents were kept in the ordinary course of business. Counsel further argued that because there was no showing that whoever prepared the forms had personal knowledge of the information recorded, the forms contained hearsay within hearsay, and that the other levels of hearsay were not admissible under the business records exception. The court overruled the objection and admitted the documents into evidence.
Thereafter, defense counsel attempted to explain during closing statements that Evans and Parker lived through the accident, because the Toyota was more crashworthy than Forester's Datsun, and because they were both wearing seat belts, while Forester was not. In support of this theory, defense counsel pointed to, among other things, the EMS patient reports that stated Evans and Parker had worn seat belts. The jury subsequently returned a verdict finding that Forester was not alive at the time of the second accident with defendant Jewell; hence his death could not have been caused by Jewell or his employer, and the court entered judgment in accordance with the verdict.
Initially, we acknowledge that the admission of evidence is within the sound judicial discretion of the trial judge, whose decision in such regard must be viewed in the context of the entire trial. Jimenez v. Gulf & W. Mfg. Co., 458 So.2d 58, 59 (Fla. 3d DCA 1984). A trial court's error in admitting or rejecting evidence does not necessarily constitute harmful error. Only when it appears that such errors injuriously affect the substantial rights of the complaining party will a judgment be reversed. Parsons v. Motor Homes of Am., Inc., 465 So.2d 1285, 1290 (Fla. 1st DCA 1985). *1373 Thus, it is the appellant's duty to demonstrate not only error in improperly admitting evidence, but also prejudice from such admission. Tallahassee Memorial Regional Medical Ctr., Inc. v. Meeks, 560 So.2d 778, 782 (Fla. 1990).
The business records exception to the hearsay rule, Section 90.803(6), Florida Statutes (1987), authorizes admission of certain written material
made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness.
In order to lay a foundation for the admission of a business record, it is necessary to call a witness who can show that each of the foundational requirements set out in the statute is present. 1 Charles W. Ehrhardt, Florida Evidence § 803.6, at 585 (2d ed. 1991) (hereinafter "Ehrhardt"). It is not necessary to call the person who actually prepared the document. The records custodian or any qualified witness who has the necessary knowledge to testify as to how the record was made can lay the necessary foundation. Id. If the offering party does not lay the necessary foundation, the evidence is not admissible under section 90.803(6). Id. See also Lowe's of Tallahassee v. Giaimo, 552 So.2d 304, 305 (Fla. 1st DCA 1989) (affidavit failed to make requisite showing to provide proper predicate for admission of doctor's records under section 90.803(6)).
In the instant case, the only testimony offered by the defense to lay the foundation for admission of the EMS patient reports under the business records exception was that of William Panchenko, an EMT who assisted in freeing Parker from the Toyota. He was shown the documents while testifying and explained that they were "patient forms that we fill out on the ambulance for patients that we work on or carry in the ambulance." Panchenko, however, did not complete the forms himself, nor did he identify the person who had done so.
We consider the above testimony insufficient to lay a proper foundation for the admission of the forms as business records. Although Panchenko's testimony arguably establishes that the reports were made at or near the time of the incident during the regular course of business, his testimony does not establish that the reports were prepared by or made from information transmitted by a person with personal knowledge. Because the defense failed to establish the foundation required by section 90.803(6) for the admission of the records, we hold that the trial court abused its discretion by allowing the two reports into evidence.[2]
In so concluding, we do not consider the cross-examination of Dr. Roberts by plaintiff's counsel, during which Roberts referred to the EMS patient reports, as "opening the door" to the error, thereby precluding the argument urged on appeal. Counsel was merely attempting to attack Roberts' credibility by showing that the *1374 basis for his opinion was erroneous. To conclude otherwise would result in a plaintiff being foreclosed from cross-examining a defense expert as to the basis for his opinion. See Ehrhardt, § 704.1, at 496 ("Whether or not the expert explains during direct examination the data upon which his opinion is based, he may be asked on cross-examination about the underlying facts and data.").
Having concluded that the statements contained in the EMS patient reports were inadmissible hearsay, the question remains as to whether the error was harmful. To resolve this question, we must consider the trial court's decision to admit evidence in the context of the entire trial. Jimenez, 458 So.2d at 59. In determining that the error was not harmless, we note particularly that the evidence on the issue of seat belt usage was conflicting. For example, Stan Hohenstein, the East Milton Volunteer Fire Chief who arrived shortly after the second collision, testified there was evidence that both Evans and Parker had struck the windshield during the first collision, therefore he assumed that neither seat belt had been buckled. EMT Panchenko testified that he did not remember seeing Parker wearing a seat belt,[3] and Dr. Roberts admitted that the highway patrol report indicated seat belts had not been used. On the other hand, Dr. Roberts testified, based on the EMS reports and the lack of a "spider web" break on the Toyota windshield and lack of interior damage to the front of the Toyota, that seat belts were used. Considering the conflicting nature of the evidence of seat belt usage, we cannot say that the error in admitting the EMS patient reports into evidence did not affect the jury's verdict.
REVERSED AND REMANDED.
WIGGINTON and ZEHMER, JJ., concur.
NOTES
[1] Although a full autopsy was not performed once the head injury had been examined, the medical examiner did find evidence of internal bleeding inside Forester's chest and abdomen.
[2] Furthermore, neither the fact that Dr. Roberts relied on the documents in forming his opinion, nor the fact that the documents were used to refresh Panchenko's recollection when he testified, makes the reports admissible. See 3-M Corp.  McGhan Medical Reports Div. v. Brown, 475 So.2d 994, 998 (Fla. 1st DCA 1985) (while expert may consider hearsay report in forming opinion, report itself was inadmissible and expert cannot be used as conduit to place inadmissible evidence before the jury); Kurynka v. Tamarac Hosp. Corp., 542 So.2d 412, 413 (Fla. 4th DCA) (court noted that expert may draw opinion from evidence that is not admissible, but expert's testimony may not be used merely to serve as conduit to place otherwise inadmissible evidence before the jury), review denied, 551 So.2d 463 (Fla. 1989); Garrett v. Morris Kirschman & Co., 336 So.2d 566, 569 (Fla. 1976) (writings used to refresh recollection are not necessarily admissible themselves); Auletta v. Fried, 388 So.2d 1067, 1068 (Fla. 4th DCA 1980) (written damage estimate prepared by insurance adjuster shortly after accident was erroneously admitted into evidence on basis that it was used to refresh recollection; accident reconstructionist's opinion based on it was consequently tainted).
[3] Panchenko did admit, after being shown a photograph of the Toyota, that the seat belt appeared to be cut, although he could not say whether it was cut at the scene of the accident or before its occurrence.