CASANUEVA, Judge.
The trial of this eminent domain action raised issues of greed, intrigue, and intra-family relationships. Unfortunately, those issues were not relevant to this action, and we must reverse because the trial court admitted certain prejudicial evidence that adversely influenced the jury’s damage award in this partial taking.
The State of Florida Department of Transportation (DOT) filed a petition in eminent domain to take certain property owned half by Hershel L. Davis and Olga B. Davis as tenants by the entirety, and half by the estate of Hershel’s mother, Juanita Davis. The other appellants in this matter, Aaron Davis and DeLee Motley, Hershel’s children, were co-curators and later co-personal representatives of the estate of their grandmother. At the time of trial, the co-personal representatives were managing their grandmother’s business, Davis Monument Company, which *62 was occupying the tract of land subject to the taking.
Davis Monument Company began operation in 1942. Juanita Davis eo-founded the company with her husband and managed it from its inception until the early 1990s. When her health declined, she passed management of the day to day operations of the company first to her sister, Sara Vesser, and then, following Ms. Vesser’s death, to her niece, Evelyn Higgins, and her nurse, Frieda Craig, jointly. Immediately prior to Juanita Davis’ death in 1994, the co-curators obtained a court order to manage the business and ousted Ms. Higgins and Ms. Craig.
Davis Monument Company occupied real property consisting of adjoining parcels on U.S. Highway 98 divided by State Street in Polk County. A building on the southern portion of the property housed both the primary business operations and the residence of Juanita Davis. The northern tract was used for employee and customer parking, equipment storage, and deliveries. Before the taking, very large trucks and other vehicles could access the business directly from Highway 98. The DOT condemned only the northern tract.
The trial should properly have focused upon the damages suffered by the landowners as a result of the DOT’s action, including the value of the property taken, the reduction in value of the remaining portion, or severance damages, and business damages. The court, however, allowed DOT to bring in evidence from which the jury might conclude that the landowners, because of their dealings with their relatives, were somehow guilty of overreaching. The landowners, however, did not institute this action; the intrigue, if any, behind their possession of the property simply was not relevant to its value.
The evidentiary errors fall into two categories: first, whether certain disputed testimony was relevant to the issue of damages, and second, whether other testimony constituted improper impeachment. First, because relevant evidence is that which tends to prove or disprove a material fact, section 90.401, Florida Statutes (1995), we must measure the following evidence, admitted over objection, against that standard. In direct examination of Juanita Davis’ niece, Evelyn Higgins, the DOT brought out that the co-curators had rudely terminated her services to the Davis Monument Company and that Juanita Davis did not desire that her grandson, Aaron Davis, have control over the business. Ms. Higgins further testified that Juanita Davis had executed a new will, which could not be found after her death, that named Ms. Higgins co-beneficiary of a trust. After the co-curators instituted an action to break this trust, Ms. Higgins compromised her claim for $15,000, of which she had to expend $4,000 on attorney’s fees. Additionally, Frieda Craig, the nurse, testified that Juanita Davis did not wish Aaron Davis to operate the business because she feared him and did not trust him.
This testimony is completely irrelevant to the issue of damages caused by the state’s eminent domain taking. In fact, the nature of the relationship between Juanita Davis and members of her family was not germane to any issue at trial. Although a trial court’s error in admitting evidence does not automatically constitute harmful error, see Forester v. Norman Roger Jewell and Brooks, 610 So.2d 1369 (Fla. 1st DCA 1992), we determine that this challenged testimony was highly prejudicial to the landowners and reverse on that basis.
The second evidentiary issue revolves around the opinion testimony of the expert witness, Duke Parrish, whom the landowners called on the issue of business damages. He testified that he did not utilize business income for the years 1991 and 1992 in his analysis because Ms. Motley had told him that those years were not representative of the monument company’s business operations. These were the years Ms. Vesser and Ms. Higgins managed the company. The DOT contended that this testimony opened the door for an examination of the credibility of Ms. Motley, the only one of all the landowners to testify. We do not agree.
Section 90.608 allows impeachment by “proof of other witnesses that material facts are not as testified to by the witness being *63 impeached.” The material fact in controversy was whether it was appropriate for an expert to disregard two of the most recent five years of business records to calculate business damages and thus to narrow the scope of his opinion. The state of mind of the landowner in relating information to Mr. Parrish is not material under the statute. Rather, it is the quality of the expert’s opinion that is material to the jury’s assessment of his credibility. Ms. Motley’s state of mind is a collateral matter. Thus, it was improper and inflammatory to litigate that issue, and this second error is a further ground for reversal.
Accordingly, we reverse the final judgment and remand for a new trial.
BLUE, A.C.J., and WHATLE^, J., concur.