BERGER, J.
Nationstar Mortgage LLC (Nationstar) appeals a final judgment, entered after a nonjury trial, in favor of Jose J. Berdecia and Carmen Berdecia (Borrowers). Na-tionstar argues the trial court erred by excluding from evidence certain mortgage records[1] originally prepared by a prior servicer, CitiMortgage, Inc. (CitiMort-gage), that were necessary to prove its foreclosure action. We agree and reverse.
The underlying facts are not in dispute. In July of 2009, CitiMortgage filed a foreclosure action against Borrowers arising out of a 2006 loan agreement. In response, Borrowers sent a letter to Citi-Mortgage acknowledging that they were behind on their mortgage payments and requesting mitigation. Sometime later, CitiMortgage filed an amended complaint, to which Borrowers answered and asserted, among other things, an affirmative defense alleging that they had paid CitiMort-gage the amounts due and owing under the note. While the case was pending, Na-tionstar became the servicer of the subject loan and was substituted as the plaintiff.
The case proceeded to trial, at which Nationstar introduced the testimony of Ruth Willoughby (Willoughby), a default case specialist for Nationstar, whose job duties included reviewing various business records associated with the mortgages that Nationstar services in preparation for trials and mediations.[2] Willoughby was called to lay a predicate for admitting into evidence mortgage documents pertinent to the case. As to those documents, Wil-loughby testified that, in the ordinary course of business, Nationstar makes and maintains mortgage servicing records; that it is the regular practice, when making and maintaining these records, to make data entries at or near the time the event took place; that the entries are made by a person with knowledge; and that the records are kept pursuant to pro *212 cedures relied upon by her at a later date. She also testified that CitiMortgage had transferred Borrowers’ records to Nations-tar. Thereafter, CitiMortgage’s payment history was reviewed for accuracy and integrated into Nationstar’s system. She stated there was a consistency between Nationstar’s payment history and Citi-Mortgage’s payment history, and that she had reviewed both. Willoughby further explained the boarding process, which is the process designed to check the accuracy of documents acquired by Nationstar from prior servicers, as follows:
During the boarding process we have a group of individuals who work for Nationstar that review all documents that come over to us from any servicer that we purchase loans from, whether it be CitiMortgage or anybody else. And they review those documents to ensure that the dates are correct, the amounts owed are correct, that everything is in the file that needs to be there, the mortgage note, the mortgage itself, any— anything really that pertains to the mortgage, the originals from when the loan was originated.
And they do review those documents. They ensure that our dates match up with the dates from the previous servi-cer. They ensure that if a loan comes over to us in review for any type of modification, the homeowner stays in that modification review or continues making payments on any type of trial payment. They also review the homeowner’s current — they—all of that goes into the system. It’s entered into the system and boarded.
We will not board a loan if it comes over to us and we find inaccuracies. If we receive a payment history that says the last payment made was 2009 and now it’s 2012 and there’s nothing in between, we will go back to the previous servicer or mortgage holder and ask for those additional documents or the reason why there is a gap in that payment history.
Despite Willoughby’s testimony, the trial court sustained Borrowers’ hearsay objection and excluded the documents on the basis that Nationstar had not laid the proper predicate for introducing them through the business records exception. See § 90.803(6), Fla. Stat. (2013). Though not altogether clear, apparently the trial court’s decision was prompted by Wil-loughby’s acknowledgment that she had not personally boarded Borrowers’ loan, and not because the documents were prepared by CitiMortgage. Regardless, it was error to exclude the documents.
Section 90.803(6) provides a hearsay exception for records of regularly conducted business activity. “The rationale behind the business records exception is that such documents have a high degree of reliability because businesses have incentives to keep accurate records.” See Bank of New York v. Calloway, 157 So.3d 1064, 1070 (Fla. 4th DCA 2015) (quoting Timberlake Constr. Co. v. U.S. Fid. & Guar. Co., 71 F.3d 335, 341 (10th Cir.1995)). Stated otherwise, “[t]he evidence is reliable because it is of a type that is relied upon by a business in the conduct of its daily affairs and the records are customarily checked for correctness during the course of the business activities.” Charles W. Ehrhardt, Ehrhardt’s Florida Evidence § 803.6 (2014 ed.); see also Calloway, 157 So.3d at 1071.
In order to be admissible under the business records exception, the movant must establish that “(1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that busi *213 ness to make such a record.” Yisrael v. State, 993 So.2d 952, 956 (Fla.2008) (citing Jackson v. State, 738 So.2d 382, 386 (Fla. 4th DCA 1999)). The movant must present this predicate in one of three formats: (1) testimony of the records custodian or other qualified witness, pursuant to section 90.803(6)(a), Florida Statutes; (2) stipulation; or (3) certification or declaration that complies with section 90.803(6)(c) and 90.902(11), Florida Statutes. Id. at 956-57. Here, Nationstar chose the “traditional route” by placing Willoughby on the stand to testify under oath as to the predicate requirements. See Id. at 956.
As a general rule, “the authenticating witness need not be ‘the person who actually prepared the business records.’” Cayea v. CitiMortgage, Inc., 138 So.3d 1214, 1217 (Fla. 4th DCA 2014) (quoting Cooper v. State, 45 So.3d 490, 492 (Fla. 4th DCA 2010)). “The records custodian or any qualified witness who has the necessary knowledge to testify as to how the record was made can lay the necessary foundation.” Twilegar v. State, 42 So.3d 177, 199 (Fla.2010) (quoting Forester v. Norman Roger Jewell & Brooks Int’l, Inc., 610 So.2d 1369, 1373 (Fla. 1st DCA 1992)). Still, “[w]hile it is not necessary to call the individual who prepared the document, the witness through whom a document is being offered must be able to show each of the requirements for establishing a proper foundation.” Mazine v. M & I Bank, 67 So.3d 1129, 1132 (Fla. 1st DCA 2011) (citing Forester, 610 So.2d at 1373). In other words, the witness must be “well enough acquainted with the activity to give the testimony.” Alexander v. Allstate Ins. Co., 388 So.2d 592, 593 (Fla. 5th DCA 1980) (citing Holt v. Grimes, 261 So.2d 528 (Fla. 3d DCA 1972)).
In the mortgage foreclosure context, proper authentication by a witness for the purposes of the business records exception “requires that the witness demonstrate familiarity with the record-keeping system of [the] business that prepared the document and knowledge of how the data was uploaded into the system.” Burdeshaw v. Bank of New York Mellon, 148 So.3d 819, 823 (Fla. 1st DCA 2014) (citing Weisenberg v. Deutsche Bank Nat’l Trust Co., 89 So.3d 1111 (Fla. 4th DCA 2012)). However, “[t]he law does not require an affiant who relies on computerized bank records to be the records custodian who entered or created the data, nor must the affiant identify who entered the data into the computer.” Glarum v. LaSalle Bank Nat’l Ass’n, 83 So.3d 780, 782 n. 2 (Fla. 4th DCA 2011); see also Lindsey v. Cadence Bank, N.A., 135 So.3d 1164, 1168 (Fla. 1st DCA 2014) (holding that an assistant vice president of the plaintiff bank “demonstrated a sufficient understanding of the bank’s computerized loan processing system to establish the foundation necessary to admit the printouts attached to her amended affidavit under the business records exception” despite the fact that the witness did not personally oversee the operation of the computer system, post payments to the system, or know the identity of the person who entered the transactions reflected on the printouts attached to her affidavit). Indeed, oftentimes the plaintiff in a foreclosure suit is not the original party to the loan. As a result, the plaintiff must prove its foreclosure case with documents that were originally prepared by the previous note owner. Under these circumstances, an employee of the current note holder may be unfamiliar with the previous owner’s system for preparing its business records.
In a perfect world, the foreclosure plaintiff would call an employee of the previous note owner to testify as to the documents. However, this is neither practical nor necessary in every situation, despite Borrow *214 ers’ argument to the contrary. See Le v. U.S. Bank, 165 So.3d 776 (Fla. 5th DCA May 22, 2015) (finding it was not error to allow a witness employed by bank’s current loan servicer to testify about payment history information contained in records obtained from a prior servicer, where the witness’s testimony met all the necessary foundational requirements for admission under section 90.803(6)); Calloway, 157 So.3d at 1072 (finding a successor business may establish trustworthiness of another business’s records for the purpose of section 90.803(6) by independently confirming the accuracy of the records upon receipt); WAMCO XXVIII, Ltd. v. Integrated Electronic Environments, Inc., 903 So.2d 230, 233 (Fla. 2d DCA 2005) (holding loan payment history of prior servicer admissible where records received from prior servicer were verified for accuracy).
Indeed, Borrowers’ contention that a current note holder is always precluded from introducing the records of a previous note owner without the testimony of an employee of the previous note owner was recently rejected by this court in Le, 165 So.3d 776. The borrower in Le argued that the trial court should not have allowed the bank’s witness to testify based on records from the prior servicer because the witness “did not work for the prior servicer and did not personally ‘board’ the records from the prior servicer.” Id. at 778. Finding no merit in the borrower’s argument, we held the witness’s testimony met all the necessary foundational requirements for admission under the business records exception. Id. Like Willoughby, “[the witness] testified that she was familiar with industry standards in recording and maintaining the records and that the records received from the prior servicer were tested for accuracy and compliance with industry standards via a boarding process before the information was input into [the current servicer’s] system”, and she was familiar with the specifics of the current servicer’s verification process. Id. Citing WAMCO, we determined the witness’s testimony was sufficient to establish the record’s trustworthiness. Id.
The Fourth District came to a similar conclusion in Calloway, when presented with facts analogous to those here. 157 So.3d at 1064. Like Nationstar, the plaintiff in Calloway, Bank of New York, relied heavily on the testimony of a litigation foreclosure specialist employed by its servicer, Resurgent, for the purpose of laying a proper predicate for admitting the servi-cer’s business records pertinent to the case. Id. at 1067. As Willoughby did, the witness in Calloway testified about documents transferred by a prior servicer. Specifically, the witness testified “(1) that the proffered document was ‘a true and accurate representation of the payment history for th[e] loan,’ (2) that it was ‘kept during the regular course of regularly-conducted activities by a person with knowledge of the event or activity,’ (3) that the ‘person making the record ha[d] a duty to accurately compile [the] information for th[e] record,’ and (4) that it is ‘the regular practice of the servicer to make such a record.’ ” Id. at 1074 (alterations in original). However, because the witness conceded she never worked for the prior ser-vicer and did not know how the prior servicer recorded its payment information, inputted its records, or whether the records were entered in the regular course of business by a person who had knowledge of its contents, the trial court sustained Calloway’s hearsay objection and barred Bank of New York from introducing the documents in evidence.[3] Id. at 1067-68. Specifically, the trial court determined that
*215 [Although [the witness] established that the records acquired from [prior servi-cer] were “accurate insofar as they [we]re the records she got from the prior servicer,” Bank of New York failed to provide a witness with knowledge of [prior servicer’s] record-making processes. Since [the witness] lacked such knowledge, the trial court found it was incumbent upon Bank of New York to have “somebody who is knowledgeable about the prior servicers ... come and explain ... their records.”
Id. at 1068.
On appeal, the Fourth District held that the records acquired from the prior servicer should have been admitted under the business records exception, see id. at 1074, and provided the following reasoning for its conclusion:
Where a business takes custody of another business’s records and integrates them within its own records, the acquired records are treated as having been “made” by the successor business, such that both records constitute the successor business’s singular “business record.” United States v. Adefehinti, 510 F.3d 319, 326 (D.C.Cir.2007), as amended (Feb. 13, 2008). However, since records crafted by a separate business lack the hallmarks of reliability inherent in a business’s self-generated records, proponents must demonstrate not only that “the other requirements of [the business records exception rule] are met” but also that the successor business relies upon those records and “the circumstances indicate the records are trustworthy.” United States v. Childs, 5 F.3d 1328, 1333 (9th Cir.1993); see also Brawner v. Allstate Indem. Co., 591 F.3d 984, 987 (8th Cir.2010) (“[A] record created by a third party and integrated into another entity’s records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied.”); United States v. Duncan, 919 F.2d 981, 986-87 (5th Cir.1990); Air Land Forwarders, Inc. v. United States, 172 F.3d 1338, 1342-44 (Fed.Cir.1999); United States v. Bueno-Sierra, 99 F.3d 375 (11th Cir.1996). This principle is codified within section 90.803(6) itself, which provides trial courts the ability to exclude documents otherwise fitting the business records exception where “the sources of information or other circumstances show lack of trustworthiness.” § 90.803(6)(a), Fla. Stat. (2008).
Given this trustworthiness threshold, mere “‘reliance by the [incorporating business] on records created by others, although an important part of establishing trustworthiness, without more is’” insufficient. State v. Fitzwater, 122 Hawai’i 354, 227 P.3d 520, 532 (2010) (quoting 2 Kenneth S. Broun et al., McCormick on Evidence § 292, at 318 (6th ed. 2006)). In most instances, a proponent will clear this hurdle by providing evidence of a business relationship or contractual obligation between the parties that ensures a substantial incentive for accuracy. See, e.g., Matter of Ollag Constr. Equip. Corp., 665 F.2d 43, 46 (2d Cir.1981) (“[B]usiness records are admissible if witnesses testify that the records are integrated into a company’s records and relied upon in its day-to-day operations.” (citations omitted)); White Indus., Inc. v. Cessna Aircraft Co., 611 F.Supp. 1049, 1061 (W.D.Mo.1985) (finding the “indicia of trustworthiness” apparent “where the reporting duty arises by way of a continuing business relationship between two independent business entities”). In the alternative — as tacitly *216 applied in WAMCO—the successor business itself may establish trustworthiness by independently confirming the accuracy of the third-party’s business records upon receipt. See, e.g., Simien v. Unifund CCR Partners, 321 S.W.3d 235, 243 (Tex.App.Houston [1 Dist.] 2010) (“[A] document created by one business may become the records of a second business if the second business ‘determines the accuracy of the information generated by the first business.’” (quoting Martinez v. Midland Credit Mgmt., Inc., 250 S.W.3d 481, 485 (Tex.App.-El Paso 2008, no pet.))). In any of the abovemen-tioned circumstances, the sufficiency of the evidence is left to the trial court’s discretion.
Id. at 1071-72 (alternation in original) (emphasis added) (footnote omitted). We agree with this rationale and, consistent with our recent holding in Le, determine that a mortgage servicer enforcing a note it has acquired from another entity can lay the proper predicate under section 90.803(6) for admitting the records of the previous entity, so long as all the requirements of the business records exception are satisfied, the witness can testify that the successor business relies upon those records, and the circumstances indicate the records are trustworthy. See Le, 165 So.3d 776; Calloway, 157 So.3d at 1074 (“[B]ecause Knowles satisfied the business records requirements ... and demonstrated knowledge of the accuracy of the records ... we reverse and remand for a new trial.”).
Based on the foregoing, we hold the trial court erred by excluding the mortgage records Nationstar sought to introduce as evidence at trial.[4] Although Willoughby did not personally participate in the “boarding” process to ensure the accuracy of the records acquired from CitiMortgage when Nationstar took over servicing the subject loan, she demonstrated a sufficient familiarity with the “boarding” process to testify about it. Her testimony not only satisfied the requirements for admitting the mortgage documents under the business records exception to the hearsay rule, her testimony also demonstrated knowledge of the accuracy of the records. Accordingly, we reverse and remand for a new trial.
REVERSED and REMANDED.
SAWAYA and ORFINGER, JJ., concur.

. The following documents were excluded from evidence: (1) a computer print-out from Nationstar's system showing the type of loan, whether the homeowner is current or in default on the loan, and any notes pertaining to the loan; (2) Nationstar's "payoff quote” purporting to show the breakdown of fees being charged in addition to the principal balance still owing; and (3) CitiMortgage’s "breach letter” sent to Borrowers in 2009.

. At the time of trial, Willoughby had worked for Nationstar for six months. Prior to Na-tionstar, she worked for CitiMortgage for eight years.

. Unlike the witness in Calloway, Willoughby in fact worked for the prior servicer, Citi- *215 Mortgage, at the time CitiMortgage initially serviced Borrowers’ loan.

. We reject Borrowers' contention that this Court’s decision in Thompson v. Citizens National Bank of Leesburg, 433 So.2d 32 (Fla. 5th DCA 1983), which reversed the trial court's entry of summary judgment based, in part, on the erroneous admission of an FDIC affidavit, controls the outcome of this case. In Thompson, we held that an affidavit based on "information and belief rather than personal knowledge" does not comply with rule 1.510(e), and is therefore not admissible into evidence and should not be considered by the trial court on a motion for summary judgment. Id. at 33. Thompson has never been cited for the proposition that only the records custodian from the business that created the record may lay the predicate for the business records exception under section 90.803(6), and we decline to do so here.