# Third District Court of Appeal

## State of Florida

Opinion filed December 13, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2604
Lower Tribunal No. 14-1350
_____

**The Bank of New York Mellon, etc.,**
Appellant,

vs.

**Samuel C. Beaufort, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Marinosci Law Group, P.C. and Donna Evertz (Fort Lauderdale), for appellant.

Evan M. Rosen (Fort Lauderdale), for appellees.

Before ROTHENBERG, C.J., and SALTER and LUCK, JJ.

SALTER, J.

The Bank of New York Mellon ("BNYM") appeals a final order of involuntary dismissal in favor of defendants/borrowers Samuel Beaufort and Audrey Horne-Beaufort (the "Borrowers") in this residential mortgage foreclosure case. At the close of a non-jury trial, the circuit court dismissed the complaint based on BNYM's "failure to prove standing as of the time the case was filed." We reverse and remand.

Facts and Procedural History

In September 2013, as BNYM prepared to commence the foreclosure action in circuit court, an assistant vice president for Bank of America, N.A. ("BANA"), signed the possession certificate required by section 702.015(4), Florida Statutes (2013), and Florida Rule of Civil Procedure Form 1.944(a). The officer certified that BANA was BNYM's loan servicer and attorney in fact, and that BNYM was in possession of the original promissory note through BANA, "which possesses the note on behalf of [BNYM]." The verified complaint was filed in January 2014.

A copy of the promissory note in the principal amount of $228,000.00 (executed January 19, 2007) and companion mortgage were attached to the verified complaint. The copy of the note indicated that it was originally issued to Countrywide Home Loans, Inc., and had been endorsed in blank. After the denial of their motion to dismiss the complaint, the Borrowers filed an answer and affirmative defenses. The first affirmative defense, captioned "Standing," alleged

2

that BNYM was not "1) the holder of the note, 2) a nonholder in possession who has the rights of a holder, or 3) a person not in possession who is entitled to enforce the instrument pursuant to Florida Statute §673.3091 or Florida Statute §673.4181(4), at the time the lawsuit was filed, therefore [BNYM] does not have standing to bring this action."[1]

The case proceeded to non-jury trial in August 2016. BNYM presented a single witness, Ms. Braithwaite. Ms. Braithwaite testified that she worked for "Ditech," the servicing entity for the note and mortgage at issue in the foreclosure suit. She identified a power of attorney between Ditech and BNYM authorizing Ditech to act on behalf of BNYM, "including foreclosure," and the power of attorney was admitted into evidence.

Ms. Braithwaite testified that she had reviewed the business records pertaining to the loan, including copies of the promissory note, the mortgage, the payment history, the notice of defaults, the assignments of mortgage, and "the overall servicing file." Counsel for the Borrowers stipulated to the admission of the note and mortgage into evidence. After Ms. Braithwaite identified the default

---

[1] That this was a "boilerplate" defense is disclosed by the fact that section 673.3091, Florida Statutes (2017), addresses lost, stolen, or destroyed instruments. Section 673.4181(4) deals with instruments (typically checks) paid by mistake and treated as dishonored. No such issues were raised by BNYM's complaint or the proof at trial. The original note and mortgage were filed as part of BNYM's case, were admitted into evidence by stipulation at trial, and were identical to the copies attached to the verified complaint.

notice, proof of delivery, and payment history, and testified that these were business records maintained in the ordinary course of Ditech's business, counsel for the Borrowers interposed various objections, which were overruled, and then agreed to address those objections during cross-examination rather than a voir dire. As to the payment history, Ms. Braithwaite also testified that the payment records were made "at or near the time of occurrence by someone with knowledge," and that the payment history reflected "the same amount that's alleged in the complaint as due and owing." She testified that the amount due and sought in damages as of the date of trial was $268,137.34.

During further cross-examination by counsel for the Borrowers, Ms. Braithwaite testified that she started working with Ditech (known previously as "Green Tree Servicing") in June 2014, and Ditech started servicing the loan in December 2013. She testified that she worked remotely (in South Florida) but out of the Jacksonville, Florida, office of Ditech.

Ms. Braithwaite admitted that, although she had access to "input notes" into the payment history, she did not personally receive payments or input the information into the system. She also testified that data from the prior servicer was incorporated into Ditech's records through the "boarding" process.[2] Ms.

---

[2] "Loan boarding, or the process by which a portfolio of loan and account data is transferred from one management system to another, is a critical concern when considering outsourcing to a third party." https://www.acenden.com/business-partners/services/loan-boarding (site last visited Nov. 22, 2017).

4

Braithwaite testified that "boarding" involves not just transferring data from one loan servicer to another, but also includes "the process of vetting that data to make sure it's accurate and reliable before it is then incorporated into the new servicer's business records." During the extended cross examination, she described the process by which a composite of the loan servicing and information technology departments work with a prior servicer, review "the policies and procedures of the prior servicer to ensure that they're in conformity with the industry standards" and also in conformity with the acquiring servicer's policies and procedures. Once those steps have been completed, "the transfer of data starts to occur. Once we receive the information from the prior servicer, it's loaded into our test environment. From the test environment, it's reviewed for accuracy, reliability, the accounts are balanced to make sure the proper methodology is being used for amortization and things of that nature. And then once it successfully passes that process, the information is loaded into—incorporated into—becomes a part of Ditech's business records." She acknowledged that she herself was not in charge of boarding at Green Tree or Ditech.

The trial court recessed the non-jury trial to consider other cases. The trial reconvened in September 2016. The parties stipulated, and the Court agreed, that the parties would rest. The Borrowers then moved for involuntary dismissal on the grounds that BNYM "failed to establish its prima facie case by failing to prove

standing at inception." After considering memoranda on the point, the trial court entered a final order granting the motion and involuntarily dismissing the complaint based on BNYM's purported failure to prove standing as of the time the case was filed. BNYM's appeal followed.

Analysis

A motion for directed verdict should only be granted when there is no reasonable evidence upon which the factfinder could render a verdict or judgment in favor of the non-moving party. Tylinski v. Klein Auto., Inc., 90 So. 3d 870, 873 (Fla. 3d DCA 2012). Our review is de novo; for purposes of the motion, the Borrowers admit the truth of all facts in evidence and every reasonable conclusion or inference that can be drawn from the evidence favorable to BNYM. Nationstar Mortg., LLC v. Wing, 210 So. 3d 216, 218 (Fla. 5th DCA 2017).

In the present case, BNYM's prima facie case established that BANA had possession of the note and mortgage as attorney in fact for BNYM at the time the certificate of possession was executed, Ditech took over the servicing three months after that, the promissory note was endorsed in blank by the original payee, and the original note (identical to the copy filed by BNYM at the inception of the lawsuit) was admitted into evidence. BNYM's witness, a representative of Ditech regarding the authenticity of the business records relating to the loan, testified to the manner in which the servicing was "boarded" by Ditech.

6

BNYM's witness also identified the default notice and loan payment records, testifying that those records agreed with the unpaid principal and interest set forth in the complaint.[3] The defense stipulated that it would not offer evidence to prove otherwise.

Here, as in Bank of New York Mellon v. Johnson, 185 So. 3d 594 (Fla. 5th DCA 2016), the involuntary dismissal must be reversed. The transfer of data and records, including possession of the note by BNYM, did not require testimony from a BANA witness. In Johnson, a successor servicer's witness testified regarding the procedures the successor servicer used to verify the accuracy of the prior servicer's records. That witness's testimony "established a sufficient foundation for the records' admissibility under section 90.803(6)(a)." Id. at 598.

BANA's execution of the certificate of possession for BNYM and verification of the complaint as attorney in fact for BNYM established that BNYM owned the original note and mortgage at the time the complaint was filed. Ms. Brathwaite's power of attorney for Ditech to act on behalf of BNYM was also admitted into evidence. That evidence, coupled with her testimony regarding the boarding procedure by which the loan records and data were transferred to Ditech and verified, established a sufficient predicate for the admission of the remaining records.

_____

[3] In their answer, the Borrowers admitted "that there has been a default, but [Borrowers] are without knowledge as to the date of the last payment made."

7

In a perfect world, the foreclosure plaintiff would call an employee of the previous note owner to testify as to the documents. However, this is neither practical nor necessary in every situation, despite Borrowers' argument to the contrary. See Le v. U.S. Bank, 165 So.3d 776 (Fla. 5th DCA May 22, 2015) (finding it was not error to allow a witness employed by bank's current loan servicer to testify about payment history information contained in records obtained from a prior servicer, where the witness's testimony met all the necessary foundational requirements for admission under section 90.803(6)).

Nationstar Mortg. v. Berdecia, 169 So. 3d 209, 213-14 (Fla. 5th DCA 2015).

Moreover, the "Bank established standing because the original note and blank-endorsed allonge was properly authenticated and introduced into evidence at trial, which was identical to the copy of the note and blank-endorsed allonge attached to the complaint." Bank of New York Mellon on Behalf of Registered Holders of Alternative Loan Trust 2007-OA7 v. Heath, 219 So. 3d 104, 106 (Fla. 4th DCA 2017).

Conclusion

BNYM established a prima facie case for foreclosure, including evidence that it had possession (through a servicer/attorney in fact) of the note and mortgage at the inception of the lawsuit. It also established the elements of default, subsequent non-payment, and computation of the amounts due. As stipulated by the parties, the Borrowers waived the right to proceed with a defense case, choosing instead to challenge, all-or-nothing, BNYM's standing. Accordingly, the case must be reversed and remanded for the trial court to vacate the order of

8

involuntary dismissal and to enter the final judgment of foreclosure based on the competent, substantial evidence presented by BNYM.

Reversed and remanded, with directions, for further proceedings.