SILBERMAN, Judge.
WAMCO XXVIII, Ltd., appeals a final judgment that finds a corporate debtor liable on two promissory notes but finds in favor of appellees Mark D. Wilson, Wayne L. Kahn, and William O’Meara, the individual guarantors (collectively, the Guarantors). • The trial court concluded that WAMCO failed to prove its damages against the Guarantors. Because the record evidence demonstrates that WAMCO proved its damages, we reverse that portion of the trial court’s ruling and remand for entry of a judgment in favor of WAM-CO. We affirm the trial court’s ruling to the extent that it found that the guaranties executed in- connection with a March 1998 loan did not apply to a loan made by another lender in October 1998.
*232 In early 1998 the Guarantors formed a company, appellee Integrated Electronic Environments, Inc. (IE2), that was in the business of installing residential audiovisual systems, lighting control, and low voltage systems. In March 1998 IE2 obtained a loan from Barnett Bank in the amount of $20,265 (the March loan). Kahn and Wilson each executed a “Continuing Unlimited Commercial Guaranty” in favor of Barnett Bank in connection with the March loan.
In October 1998 IE2 closed on a second loan in the amount of $500,000 with Nati-onsBank (the October loan). Wilson and O’Meara each executed a “Commercial Guaranty” in favor of NationsBank in connection with the October loan. The Commercial Guaranty provides that each guarantor is responsible for 43% of the indebtedness on the October loan.
In late 1999, NationsBank became the successor to Barnett Bank. Sometime later, Bank of America became the successor to NationsBank. In 2001 WAMCO purchased the March and October loans and associated guaranties from Bank of America. WAMCO sent regular statements to IE2 regarding the balances due on the loans, and IE2 never objected to any of these statements. IE2 subsequently failed as a business and ceased making payments on the loans. After making demand, WAMCO filed suit against IE2 and the Guarantors on the outstanding obligations.
IE2 did not respond to the complaint, and a clerk’s default was entered against it. Trial was held on January 21 and 22, 2004, and IE2 did not appear for trial or contest WAMCO’s claim for damages. The trial court entered judgment in WAM-CO’s favor and against IE2 in the amount WAMCO claimed as the outstanding balances on the loans: $9658.83 in principal and interest on the March loan and $322,740.33 in principal, interest, and late charges on the October loan.
With respect to the Guarantors, the trial court made the following findings: (1) Wilson and Kahn are jointly and severally liable for the outstanding indebtedness on the March loan under the guaranties executed in connection with that loan; (2) Wilson and O’Meara are liable for 43% of the outstanding indebtedness on the October loan under the guaranties executed in connection with that loan; and (3) the continuing guaranties that Wilson and Kahn signed in favor of Barnett Bank in connection with the March loan were not effective as to NationsBank so as to obligate them on the October loan. After making these findings, the court then determined that “there was a lack of admissible evidence as to the amounts of the outstanding balances on the notes and, therefore, a failure of proof as to the amount of damages.” Based on this perceived failure of proof, the trial court found in favor of the Guarantors on all of WAMCO’s claims. In this appeal, WAMCO challenges the trial court’s finding that there was a failure of proof and the court’s entry of judgment in favor of the Guarantors.
At trial, WAMCO presented evidence, including business records, regarding the amount outstanding on the loans. The Guarantors challenged the admissibility of the records, asserting that they contained hearsay. They argued that WAM-CO had obtained balance information from Bank of America at the time that WAMCO acquired the loans and that the balance information constituted hearsay. WAM-CO responded that its documents were admissible as business records and that the information in those records, along with witness testimony, properly established the amounts due.
The record reflects that Robert Grauer testified for WAMCO. He is a vice president of WAMCO and a vice president of its *233 related company, First City Servicing, which services loans for WAMCO. Grauer’s duties include overseeing collections of loans that WAMCO purchases, and he was personally involved in servicing the March and October loans. Grauer testified that the beginning numbers on the outstanding balances were the numbers received from Bank of America at the time WAMCO purchased the loans. The numbers were put into First City’s computer system, on WAMCO’s behalf, and kept,in the normal course of business. Entries related to payments and balance adjustments were made and maintained in the ordinary course of First City’s business.
Grauer testified that the loan payment histories reflected payments at the time they were made and the outstanding balances. He stated that WAMCO relied on the documentation and balance information that it received from Bank of America at the time WAMCO purchased the loans. He indicated that while he did not know the specific person at Bank of America who would have put information into the Bank of America system, he knew how bank loan accounting systems worked and that the procedures were “bank-acceptable accounting systems.” He added that he reviewed the records that WAMCO and First City received from Bank of America, and he described the process that WAM-CO and First City use to verify the accuracy of information received in connection with loan purchases. He explained that at the time of a loan purchase “we put it on our system, the files that are delivered to us. We go through the files, check for the accuracy, anything that seems out of line, go through the file, reading it to get a good idea of the history of the loan, look at the payment histories, et cetera, and then make an initial contact with the customer.”
Over the Guarantors’ objections the trial court admitted exhibits 10 and 17 (WAMCO’s loan payment histories for the March and October loans) into evidence as WAMCO’s business records. In admitting exhibit 10 the trial court stated that the payment history was admitted but that the Guarantors had “a right to take issue with the beginning number.” Grauer also testified, over objection, as to the amounts due for each of the loans.
We agree with WAMCO that the trial court erred in concluding that there was a íáck of admissible evidence and a failure of proof as to the outstanding loan balances. The trial court properly admitted exhibits 10 and 17 into evidence as business records of WAMCO. See § 90.803(6), Fla.Stat. (2003); Davis v. State, 707 So.2d 842, 843 (Fla. 2d DCA 1998); United States v. Parker, 749 F.2d 628, 633 (11th Cir.1984); United States v. Pfeiffer, 539 F.2d 668, 670-71 (8th Cir.1976); Ashley v. United States, 413 F.2d 249, 250-51 (5th Cir.1969). These documents, together with Grauer’s testimony, constituted competent, substantial evidence to prove WAMCO’s damages.
Section 90.803(6) provides that records may be excluded from evidence if “the sources of information or other circumstances show lack of trustworthiness.” Yet here, in admitting exhibit 10, the trial court stated that the payment history was admitted as a record of WAMCO’s but that the Guarantors had the right to challenge the beginning number. The Guarantors did not - demonstrate, and nothing in the record establishes, that the loan information WAMCO received from Bank of America was suspect or untrustworthy or that the balances that WAMCO claimed as due were incorrect. '
Because WAMCO met its burden and properly established the amounts due under the loans through Grauer’s testimony and exhibits 10 and 17, we reverse the trial court’s determination that WAMCO failed to prove its damages.
*234 Next, we address the trial court’s ruling that the guaranties executed by Kahn and Wilson in connection with the March loan did not obligate them on the October loan. The trial court, found that WAMCO did not establish that Nations-Bank was the successor of Barnett Bank at the time NationsBank made the October loan and, therefore, that the March guaranties were not effective as guaranties of the October loan. The court stated that the fact NationsBank became a successor to Barnett Bank sometime after Nations-Bank had made the October 1998 loan did not obligate Kahn and Wilson, under the March 1998 guaranties, for the October loan. We agree with the trial court’s conclusion.
First, the evidence did not establish that NationsBank had succeeded Barnett Bank as of October 1998, the time of the $500,000 loan. In fact, a Bank of America representative testified that she believed the closing on NationsBank’s acquisition of Barnett Bank occurred at the end of 1999.
Second, this court has recognized. that “[a] continuing guaranty covers all transactions, including future ones, that. are within the contemplation of the agreement.” Brann v. Flagship Bank of Pinellas, N.A., 450 So.2d 237, 239 (Fla. 2d DCA 1984). The question here is whether the terms of the March 'guaranties contemplate that they would apply to loans made by a lender that might someday thereafter acquire Barnett Bank. The March guaranties are “absolute and unconditional.” The indebtedness is “any and all of [IE2’s] liabilities, obligations, debts, and indebtedness to [Barnett Bank, its successors and assigns], as well now existing, or hereinafter incurred or created.” The guarantor’s liability “is unlimited” and the guarantor’s obligations “are continuing.”
We read the March guaranties to. include any future loan to IE2 made by a lender that is,. at, the time of the future loan, a successor.or assignee of Barnett Bank. We agree with the trial court that there is no basis to say that these guaranties apply to preexisting loans made by a lender that later becomes an assignee of Barnett. Thus, based on the language in the guaranties, we. affirm the trial court’s ruling on this issue.
Therefore, we affirm in part and reverse in part as stated above and remand for the trial court to enter judgment in favor of WAMCO. We note that in accordance with the trial court’s findings, Kahn and Wilson aré jointly and severally liable under the March guaranties for the outstanding indebtedness on the March 1998 loan, and Wilson and O’Meara are each hable for 43% of the outstanding indebtedness on the October 1998 loan.
Affirmed in part, reversed in part, and remanded.
SALCINES and VILLANTI, JJ., Concur.