DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BANK OF NEW YORK, AS TRUSTEE FOR THE NOTEHOLDERS CWABS INC., ASSET BACKED NOTES SERIES 2006-SD4006-SD4,**
Appellant,

v.

**ANDREW CALLOWAY,**
Appellee.

No. 4D13-2224

[January 7, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Edward H. Fine, Judge; L.T. Case No. 502008CA004784AW.

Erin M. Berger of Kelley Kronenberg, Tampa, for appellant.

Donna Greenspan Solomon of Solomon Appeals, Mediation & Arbitration, Fort Lauderdale and Roy D. Oppenheim, Geoffrey E. Sherman and Jacquelyn K. Trask of Oppenheim & Pilelsky, Weston, for appellee.

GILLESPIE, KENNETH, Associate Judge.

Appellant Bank of New York, as trustee for the Noteholders CWABS Inc., Asset Backed Notes Series 2006-SD4006-SD4 ("Bank of New York"), appeals the trial court's order involuntarily dismissing its foreclosure action. Bank of New York maintains that the trial court abused its discretion in excluding the Borrower's payment history since its witness laid a proper foundation under the business record exception. We agree and reverse.

## I. FACTS

In February 2008, Bank of New York filed a complaint seeking to foreclose upon a real property mortgage executed by the Borrower. The matter proceeded to a non-jury trial on May 8, 2013, during which Bank of New York centered its case around one witness—Jean Knowles—a litigation foreclosure specialist for its servicer, Resurgent Capital Services

LP ("Resurgent"). The vital purpose of calling Knowles was to lay a predicate for admitting Resurgent's business records pertinent to the case.

Knowles testified that Resurgent became the fourth servicer[1] of the subject loan on November 16, 2012, more than five years after the Borrower's alleged July 1, 2007 default. To effectuate the ownership change, the prior servicer—Bank of America—transferred to Resurgent the Borrower's original loan documents along with its business records chronicling his complete payment history. Upon receipt, Resurgent reviewed the documents for accuracy before scanning them and inputting the payment information into its records system.

Alongside this backdrop, Bank of New York attempted to introduce into evidence the Borrower's "payment history"—a printed tabulation from Resurgent's records laying out the Borrower's monthly payments from the date the loan was executed. To lay a foundation to the business record, Knowles testified that: (1) the proffered document was "a true and accurate representation of the payment history for th[e] loan," (2) it was "kept during the regular course of regularly-conducted activities by a person with knowledge of the event or activity," (3) the "person making the record ha[d] a duty to accurately compile [the] information for th[e] record," and (4) it is "the regular practice of the servicer to make such a record." In addition, Bank of New York sought to introduce a document entitled "transaction dates," which contained "the dates that the mortgage [wa]s first due, the maturity date, transaction dates," and "what date [Resurgent] acquired it."

As to both documents, the Borrower's counsel objected upon lack of foundation grounds and requested to voir dire the witness. During questioning, Knowles admitted that since Resurgent acquired the loan's servicing rights five years after the Borrower's alleged default, the payment history contained in its records derived from the documents transferred to it by Bank of America. Notwithstanding, Knowles conceded she never worked for Bank of America and thus did not know how Bank of America recorded its payment information, who at Bank of America input the records, whether that information was entered in the regular course of Bank of America's business activity, and whether the person who inputted that information did so with knowledge of its contents.

Relying upon this testimony, the Borrower's counsel argued the two proffered documents constituted inadmissible hearsay since Knowles

---

[1]The previous three servicers which made up this relay team were US Money Source, Countrywide, and Bank of America

lacked personal knowledge regarding Bank of America's processes for obtaining and recording loan information. Bank of New York responded that Knowles laid a sufficient predicate under the business records hearsay exception by establishing her familiarity with Resurgent's business records and testifying that Resurgent reviews the accuracy of all information transferred to it upon acquiring a loan.

The trial court sustained the Borrower's hearsay objection, barring Bank of New York from introducing any evidence. In so ruling, the trial court found that although Knowles established that the records acquired from Bank of America were "accurate insofar as they [we]re the records she got from the prior servicer," Bank of New York failed to provide a witness with knowledge of Bank of America's record-making processes. Since Knowles lacked such knowledge, the trial court found it was incumbent upon Bank of New York to have "somebody who is knowledgeable about the prior servicers . . . come and explain . . . their records."

Thereafter, Bank of New York called the Borrower to establish his payment history. The Borrower testified that he did not feel obligated to pay his outstanding indebtedness because Bank of New York's "paperwork is awful." Furthermore, the Borrower testified that the payment history report was inaccurate, since he made several payments between June 2006—the date he executed the loan—and November 1, 2006—his first listed payment date. At the conclusion of the testimony, the Borrower moved for a motion for involuntary dismissal with prejudice due to Bank of New York's inability to prove the amounts due under the loan. The trial court granted the Borrower's motion for involuntary dismissal noting that it could not "figure out what the balance is."

Two weeks later, on May 21, 2013, the trial court entered a written order memorializing its ruling that Knowles' "testimony concerning the subject loan prior to November 18, 2012, constituted . . . inadmissible hearsay." As justification, the trial court's order noted that Knowles "was not familiar with the prior servicer's business practices or procedures," that she "was unable to testify as to the accuracy of the prior servicer's business records," and that she "did not know who, how or when the data entries were made into the prior servicer's business records." The trial court found that Knowles "could not provide the requisite evidentiary foundation for any business records of the prior servicers with respect to the subject loan." Following the denial of Bank of New York's motion for rehearing, this appeal ensued.

## II. ANALYSIS

The standard of review for evidentiary rulings is abuse of discretion, limited by the rules of evidence. *See Yang v. Sebastian Lakes Condo. Ass'n,* 123 So. 3d 617, 620 (Fla. 4th DCA 2013). The trial court's granting of a motion for involuntary dismissal is reviewed de novo. *See Deutsche Bank Nat'l Trust Co. v. Huber,* 137 So. 3d 562, 563 (Fla. 4th DCA 2014)

Section 90.803(6), Florida Statutes (2008), "provides a hearsay exception for records of regularly conducted business activity." *A.S. v. State*, 91 So. 3d 270, 271 (Fla. 4th DCA 2012). To admit business record evidence under this subsection, the proponent must demonstrate: (1) that the record was made at or near the time of the event; (2) that it was made by or from information transmitted by a person with knowledge; (3) that it was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record. *See Yisrael v. State*, 993 So. 2d 952, 956 (Fla. 2008). Such foundation may be established in one of three ways:

> "First, the proponent may take the traditional route, which requires that a records custodian take the stand and testify under oath to the predicate requirements." [*Yisrael*, 993 So. 2d at 956] (citing § 90.803(6) (a), Fla. Stat. (2004)). "Second, the parties may stipulate to the admissibility of a document as a business record." *Id.* "Third and finally, since July 1, 2003, the proponent has been able to establish the business-records predicate through a certification or declaration that complies with sections 90.803(6)(c) and 90.902(11), Florida Statutes (2004)." *Id.* at 957.

*Cayea v. CitiMortgage, Inc.*, 138 So. 3d 1214, 1217 (Fla. 4th DCA 2014). When employing this first option, "it is not necessary to call the individual who prepared the document"; however, "the witness through whom [the] document is being offered must be able to show each of the requirements for establishing a proper foundation." *Mazine v. M & I Bank*, 67 So. 3d 1129, 1132 (Fla. 1st DCA 2011) (citation omitted); *see also Hunter v. Aurora Loan Servs., LLC*, 137 So. 3d 570, 573 (Fla. 1st DCA 2014).

In reaching its decision, the trial court relied heavily on *Glarum v. La Salle Bank National Association*, 83 So. 3d 780 (Fla. 4th DCA 2011). In *Glarum*, this Court held that an affidavit of a loan servicing specialist was inadmissible under the business records exception because the specialist "had no knowledge of how his *own* company's data was produced and he was not competent to authenticate that data." *Id.* at 783 (emphasis added). Notably, the specialist in *Glarum* attested that he did not know

- 4 -

whether his business's records were made in the regular course of business, whether the business made the data entries into its computer system, or who made the entries when the borrowers made payments. *Id.* at 782-83. Furthermore, the specialist relied upon data supplied by a prior servicer, "with whose procedures he was even less familiar." *Id.* at 783. While this latter fact was relevant, the takeaway was that the "specialist had a total lack of knowledge as to how his company's own data was produced." *Weisenberg v. Deutsche Bank Nat'l Trust Co.*, 89 So. 3d 1111, 1112 (Fla. 4th DCA 2012) (distinguishing *Glarum* where the supervisor at the bank's servicing agent's deposition showed that she "knew how the data was produced" and "demonstrated that she was familiar with the bank's record-keeping system and had knowledge of how the data was uploaded into the system").

In a footnote, the *Glarum* court addressed concerns its holding could be interpreted as a blanket prohibition on lending institutions relying upon prior servicers' loan records, stating:

> The law does not require an affiant who relies on computerized bank records to be the records custodian who entered or created the data, nor must the affiant identify who entered the data into the computer. ***The law is also clear there is no per se rule precluding the admission of computerized business records acquired from a prior loan servicer.***

83 So. 3d at 782 n.2 (emphasis added).

While *Glarum* failed to set forth those circumstances justifying the admission of "computerized business records acquired from a prior loan servicer," an illustration materialized in *WAMCO XXVIII, Ltd. v. Integrated Electronic Environments, Inc.*, 903 So. 2d 230 (Fla. 2d DCA 2005), a case factually similar to this one. In that case, WAMCO presented "loan payment histories" to prove the amount due by corporate debtors under promissory notes. *Id.* at 233. Confronting a hearsay challenge, WAMCO's vice president testified that the loans had been purchased from Bank of America, and that the "beginning numbers on the outstanding balances were the numbers received from Bank of America." *Id.* While the vice president conceded that he did not know the specific person at Bank of America who inputted the information, he explained that "he knew how bank loan accounting systems worked and that the procedures were 'bank-acceptable accounting systems.'" *Id.* Further, the vice president described the process WAMCO used "to verify the accuracy of information received in connection with [the] loan purchases," stating that employees

"go through the files, check [them] for . . . accuracy, . . . and then make an initial contact with the customer." *Id.*

The Second District held WAMCO's records were properly admitted under the business records exception, noting that, although documents may be excluded under section 90.803(6) if "the sources of information or other circumstances show lack of trustworthiness," the debtors *"did not demonstrate, and nothing in the record establishe[d], that the loan information WAMCO received from Bank of America was suspect or untrustworthy or that the balances that WAMCO claimed as due were incorrect." Id.* (emphasis added).

There has been confusion among litigants and jurists alike as to the applicability of the *WAMCO* decision. For example, one court has interpreted *WAMCO* as standing for the broad proposition that a lending institution may "lawfully rely on the records and loan transaction history of a prior loan servicer." *In re Sagamore Partners, Ltd.*, No. 11-37867-BKC-AJC, 2012 WL 3564014, at *4 (Bankr. S.D. Fla. Aug. 17, 2012). Others seem to hold that *WAMCO*'s process of verifying the accuracy of the received records independently established the exception's foundational elements. *See Holt v. Calchas, LLC,* 39 Fla. L. Weekly D2305 (Fla. 4th DCA Nov. 5, 2014). It is our intention to shed some light on the subject.

"The rationale behind the business records exception is that such documents have a high degree of reliability because businesses have incentives to keep accurate records." *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.,* 71 F.3d 335, 341 (10th Cir. 1995); *see also United States v. Veytia-Bravo,* 603 F.2d 1187, 1189 (5th Cir. 1979) (explaining that the justification for the business records exception lies in "the reliability or trustworthiness of the records sought to be introduced"). Businesses rely upon their records "in the conduct of [their] daily affairs" and "customarily check[ them] for correctness during the course of the business activities." Charles W. Ehrhardt, *Florida Evidence* § 803.6 (2014 ed.)[2]; *see also Bean v. Montana Bd. of Labor Appeals*, 965 P.2d 256, 262 (Mont. 1998). Thus, courts view the "material contained in those records [a]s more likely to be truthful than the average hearsay." *United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000).

---

[2]"Florida case law has recognized Professor Charles Ehrhardt's discussion of controlling law regarding the business record exception." *Shorter v. State*, 98 So. 3d 685, 690 (Fla. 4th DCA 2012), *rev. denied*, 133 So. 3d 528 (Fla. 2014).

Where a business takes custody of another business's records and integrates them within its own records, the acquired records are treated as having been "made" by the successor business, such that both records constitute the successor business's singular "business record." *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007), as amended (Feb. 13, 2008).[3]  However, since records crafted by a separate business lack the hallmarks of reliability inherent in a business's self-generated records, proponents must demonstrate not only that "the other requirements of [the business records exception rule] are met" but also that the successor business relies upon those records and "the circumstances indicate the records are trustworthy." *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993); *see also Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010) ("[A] record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied."); *United States v. Duncan*,

---

[3]Where, as here, a Florida evidentiary rule is patterned after its federal counterpart, "federal cases interpreting comparable provisions are persuasive and routinely looked to for interpretive guidance." *Carriage Hills Condo., Inc. v. JBH Roofing & Constructors, Inc.*, 109 So. 3d 329, 334 n.1 (Fla. 4th DCA) *rev. dismissed*, 130 So. 3d 692 (Fla. 2013).  In that regard, Federal Rule of Evidence 803(6) provides as follows:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
> > (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> >
> > (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> >
> > (C) making the record was a regular practice of that activity;
> >
> > (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> >
> > (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

919 F.2d 981, 986-87 (5th Cir. 1990); *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1342-44 (Fed. Cir. 1999); *United States v. Bueno-Sierra*, 99 F.3d 375 (11th Cir. 1996). This principle is codified within section 90.803(6) itself, which provides trial courts the ability to exclude documents otherwise fitting the business records exception where "the sources of information or other circumstances show lack of trustworthiness." § 90.803(6)(a), Fla. Stat. (2008).

Given this trustworthiness threshold, mere "'reliance by the [incorporating business] on records created by others, although an important part of establishing trustworthiness, without more is'" insufficient. *State v. Fitzwater*, 227 P.3d 520, 532 (Haw. 2010) (quoting 2 Kenneth S. Broun et al., *McCormick on Evidence* § 292, at 318 (6th ed. 2006)). In most instances, a proponent will clear this hurdle by providing evidence of a business relationship or contractual obligation between the parties that ensures a substantial incentive for accuracy. *See, e.g., Matter of Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981) ("[B]usiness records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations." (citations omitted)); *White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1061 (W.D. Mo. 1985) (finding the "indicia of trustworthiness" apparent "where the reporting duty arises by way of a continuing business relationship between two independent business entities"). In the alternative—as tacitly applied in *WAMCO*—the successor business itself may establish trustworthiness by independently confirming the accuracy of the third-party's business records upon receipt. *See, e.g., Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 243 (Tex. App. Houston [1 Dist.] 2010) ("[A] document created by one business may become the records of a second business if the second business 'determines the accuracy of the information generated by the first business.'" (quoting *Martinez v. Midland Credit Mgmt., Inc.*, 250 S.W.3d 481, 485 (Tex. App.-El Paso 2008, no pet.)). In any of the abovementioned circumstances, the sufficiency of the evidence is left to the trial court's discretion.

In the case at bar, Knowles confirmed the trustworthiness of the relied-upon third-party business records by testifying that Resurgent "reviewed" Bank of America's supplied payment histories "for accuracy" before integrating them into its own records. *See WAMCO*, 903 So. 2d at 233; *Simien*, 321 S.W.3d at 243. Particularly, Knowles testified that Resurgent became the fourth servicer of the subject loan on November 16, 2012, more than five years after the Borrower's alleged July 1, 2007 default. To facilitate the ownership change, Bank of America transferred to Resurgent the Borrower's original loan documents along with its business records chronicling his complete payment history, which Resurgent reviewed for

accuracy before scanning them and inputting the payment information into its records system.

Nevertheless, even had Knowles not so testified, the circumstances of the loan transfer itself would have been sufficient to establish trustworthiness given the business relationships and common practices inherent among lending institutions acquiring and selling loans. As the Supreme Court of Massachusetts has explained:

> "[T]he problem of proving a debt that has been assigned several times is of great importance to mortgage lenders and financial institutions." *New England Sav. Bank v. Bedford Realty Corp.*, 246 Conn. 594, 607, 717 A.2d 713 (1998). Given the common practice of banks buying and selling loans, we conclude that it is normal business practice to maintain accurate business records regarding such loans and to provide them to those acquiring the loan. *See Wingate v. Emery Air Freight Corp.*, [432 N.E.2d 474 (Mass. 1982)]. *See also United States v. Samaniego*, 187 F.3d 1222, 1224 n.1 (10th Cir. 1999) (including bank records in "class of records commonly viewed as particularly trustworthy"); *Federal Deposit Ins. Corp. v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986), quoting *Weinstein's Evidence* at 803–178 (1985) ("foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records . . . particularly in the case of bank and similar statements"). Therefore, the bank need not provide testimony from a witness with personal knowledge regarding the maintenance of the predecessors' business records. The bank's reliance on this type of record keeping by others renders the records the equivalent of the bank's own records. To hold otherwise would severely impair the ability of assignees of debt to collect the debt due because the assignee's business records of the debt are necessarily premised on the payment records of its predecessors.

*Beal Bank, SSB v. Eurich,* 831 N.E.2d 909, 914 (Mass. 2005).

As applied to this case, the Borrower urges this Court to find Resurgent's payment history records presumptively untrustworthy since he testified some of his payments were unaccounted for. For the reasons noted above, this discrepancy should not bar foreclosure. Here, the Borrower is not contending that he is not in default, but only that some of his payments were not accounted for—mainly payments between June

2006, the date he executed the loan, and November 1, 2006, his first listed payment date. Giving the Borrower the benefit of the doubt and utilizing December 2006 as the date the Borrower defaulted on his loan does not change the fact that the Borrower is in default. This foreclosure action was brought in February of 2008, some 18 months after the Borrower executed the loan; trial commenced on May 8, 2013, some 83 months following the execution of the loan by the Borrower. As such, the trial court has broad discretion to reconcile any discrepancies, if warranted, based on the evidence presented. Minor discrepancies in calculations, given the volumes of records transferred from one business entity to another, should not render business records of a successor servicer untrustworthy for purposes of laying a foundation for the business record exception given that the trustworthiness of the records has been established.

Our decision in this case, and on this record, should not be construed as a "green light" for lenders to present a "robo" witness to establish the business record exception. As discussed previously, admission of a business record is predicated on the proponent demonstrating (1) that the record was made at or near the time of the event, (2) that it was made by or from information transmitted by a person with knowledge, (3) that it was kept in the ordinary course of a regularly conducted business activity, and (4) that it was a regular practice of that business to make such a record. *See Yisrael*, 993 So. 2d at 956. The requirements of reliance and trustworthiness do not supplant this rule's provisions; "rather, we view them as necessary in these circumstances to satisfy the rule's requirement that the records were made in the course of a regularly conducted activity of the incorporating entity." *Fitzwater*, 227 P.3d at 534 (internal quotation omitted).

### III. CONCLUSION

It is well-settled that a record custodian who has been called to testify under oath need not be the actual person who prepared the document, but he or she must demonstrate knowledge of each requirement for establishing the business record foundation. Here, Bank of New York attempted to introduce into evidence the Borrower's payment history. Knowles was called as the records custodian and established the requisite knowledge and foundation for the admission of Resurgent's business records pursuant to the business record exception contemplated by Rule 90.803(6). Specifically, Knowles testified to the transmittal of the Borrower's records from Bank of America to Resurgent which included the Borrower's original loan documents along with its business records chronicling his complete payment history. Knowles testified that these

documents were reviewed for accuracy before Resurgent scanned them and inputted the payment information into its records system. Further, Knowles laid a foundation to the business record exception by testifying (1) that the proffered document was "a true and accurate representation of the payment history for th[e] loan," (2) that it was "kept during the regular course of regularly-conducted activities by a person with knowledge of the event or activity," (3) that the "person making the record ha[d] a duty to accurately compile [the] information for th[e] record," and (4) that it is "the regular practice of the servicer to make such a record."

Knowles's testimony, in and of itself, was sufficient to clear the Borrower's lack of foundation and hearsay objections. Notably, the Borrower argues that Resurgent's payment history relating to payments made by him is inaccurate and, therefore, untrustworthy since he testified some of his payments were unaccounted-for. In the circumstances presented, as long as a business entity's records obtained from prior servicers establish trustworthiness—i.e., that the records are what they purport to be and were subject to the business' internal practices and procedures to ensure accuracy of the records—the records are cleared for admission and satisfy the business record exception to hearsay.

This Court is cognizant of the trial court's diligence in attempting to synthesize the various cases decided among the district courts in foreclosure litigation in so ruling; however, because Knowles satisfied the business records requirements under 90.806(6), and demonstrated knowledge of the accuracy of the records as espoused in *Holt,* 39 Fla. L. Weekly at D2305, a recent case decided by this Court, we reverse and remand for a new trial.

*Reversed and Remanded.*

DAMOORGIAN, C.J., and STEVENSON, J., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**