## OCWEN LOAN SERVICING, LLC, Appellant,

v.

## Robert GUNDERSEN and Joan Gundersen, Appellees.

### No. 4D15–2809.

District Court of Appeal of Florida, Fourth District.

Sept. 28, 2016.

Kimberly S. Mello and Laura J. Bassini of Greenberg Traurig, P.A., Tampa, and Patrick G. Broderick of Greenberg Traurig, P.A., West Palm Beach, for appellant.

Keith A. Fousek of Law Office of Keith A. Fousek, Fort Myers, for appellees.

LEVINE, J.

The issue presented for our consideration in this appeal of the dismissal of a complaint for mortgage foreclosure is whether the trial court abused its discretion in granting an involuntary dismissal after excluding the bank's business records, which included records from the prior servicer. We find the trial court abused its discretion in excluding the records because the bank's witness demonstrated sufficient familiarity with the boarding process, and his testimony established the trustworthiness of the prior servicer's records. As such, we reverse the involuntary dismissal and remand for further proceedings.

Ocwen filed an amended complaint for mortgage foreclosure against appellees. During trial, Harrison Whittaker, an employee of Ocwen, testified that he was familiar with Ocwen's recordkeeping system and how the loan data was maintained. Whittaker testified that the records of the prior servicer, GMAC, went through Ocwen's boarding process after Ocwen purchased GMAC's assets. According to Whittaker, the records went "through a strict verification process" to ensure the accuracy of the records. The boarding process included "checks and balances" and quality control procedures to ensure the information had been backed up and verified. If Ocwen could not verify any information, it would not be entered into the system. After the verification process was completed, GMAC's records became a part of Ocwen's business records. Ocwen continued to use GMAC's servicing platform.

During Whittaker's testimony, Ocwen introduced the original note and mortgage into evidence. The note contained an endorsement in blank by the original lender. Ocwen also sought to introduce a "looking-glass screenshot" to show that the original note was copied and entered into GMAC's system before the filing of the complaint. Appellees objected based on a lack of foundation because Whittaker did not have any personal knowledge that the information entered by GMAC was correct.

During voir dire by appellees, Whittaker admitted that he did not know who verified the information or who entered the information into the system. Whittaker also did not know who boarded the records. The court then questioned Whittaker whether he was personally familiar with GMAC's recordkeeping system, or whether he was relying on what other people told him. The court also inquired whether he had personal knowledge of how the prior information was prepared and who prepared it. Whittaker responded that he had not worked for GMAC. The court sustained the objection and excluded the screenshot unless Ocwen could establish a further predicate.

Whittaker then testified that Ocwen's boarding process team ensured GMAC's recordkeeping system was up to date and acceptable. Ocwen used similar record-

keeping and computer systems as GMAC. Whittaker worked for multiple departments in Ocwen and observed data entry and verification of documents firsthand.

After this testimony, Ocwen again attempted to introduce the screenshot into evidence, and appellees again objected due to lack of foundation and personal knowledge. The court sustained the objection after commenting that Whittaker was not involved in the boarding process and did not have any knowledge as to the prior servicing system. For the same reasons, the court also excluded the loan payment history printout, the default letter, a screen printout of the Fiserv computer system that showed the dates when the default letter was sent, and a printout of the MERS milestone sheet showing transfer of the servicing rights from GMAC.

At the close of Ocwen's case, the trial court entered an involuntary dismissal. Ocwen moved for rehearing, asserting that the trial court erred in excluding business records based on information Ocwen acquired from the prior loan servicer. The trial court denied the motion. In its written order, the trial court found, in pertinent part: "Plaintiff's witness was unfamiliar with the verification procedures and the loan boarding process. Plaintiff's witness also failed to verify with sufficient detail that Plaintiff independently verified the accuracy of the payment history and loan information from the prior servicer or to detail the procedures used for such verification."

■ "The standard of review for admissibility of evidence is abuse of discretion, limited by the rules of evidence." *Tengbergen v. State*, 9 So.3d 729, 736 (Fla. 4th DCA 2009). "[T]he question of whether evidence falls within the statutory definition of hearsay is a matter of law, subject to de novo review." *Burkey v. State*, 922 So.2d 1033, 1035 (Fla. 4th DCA 2006).

The business records exception to the hearsay rule allows the admission of

[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness
. . . .

§ 90.803(6)(a), Fla. Stat.

■ In order for a document to be admissible under this exception, the proponent must show:

(1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record.

*Yisrael v. State*, 993 So.2d 952, 956 (Fla. 2008).

■ "Where a business takes custody of another business's records and integrates them within its own records, the acquired records are treated as having been 'made' by the successor business, such that both records constitute the successor business's singular 'business record.'" *Bank of N.Y. v. Calloway*, 157 So.3d 1064, 1071 (Fla. 4th DCA 2015). "[T]he authenticating witness need not be 'the person who actually prepared the business records.'" *Cayea v. CitiMortgage, Inc.*, 138 So.3d 1214, 1217 (Fla. 4th DCA 2014) (quoting *Cooper v. State*, 45 So.3d 490, 492 (Fla. 4th DCA 2010)). As such, it is not necessary to present a wit-

ness who was employed by the prior servicer or who participated in the boarding process. *See Nationstar Mortg., LLC v. Berdecia*, 169 So.3d 209, 213–14 (Fla. 5th DCA 2015); *Le v. U.S. Bank*, 165 So.3d 776, 778 (Fla. 5th DCA 2015). Rather, the records of a prior servicer are admissible where the current note holder presents testimony that it "had procedures in place to check the accuracy of the information it received from the previous note holder." *Holt v. Calchas, LLC*, 155 So.3d 499, 506 (Fla. 4th DCA 2015). The testifying witness "just need[s][to] be well enough acquainted with the activity to provide testimony." *Cayea*, 138 So.3d at 1217. "Once this predicate is laid, the burden is on the party opposing the introduction to prove the untrustworthiness of the records." *Love v. Garcia*, 634 So.2d 158, 160 (Fla. 1994).

In *Calloway*, the bank sought to introduce the payment history and transaction dates from the computer system of the current servicer, Resurgent. The payment history was derived from documents transferred to Resurgent from the prior servicer. An employee of Resurgent testified that Resurgent reviewed the prior servicer's documents for accuracy before scanning them and inputting the payment information into its records system. During voir dire, the witness admitted that she never worked for the prior servicer. The borrower objected to the admission of the documents based on lack of foundation. The trial court excluded the documents because of the witness's lack of familiarity with the prior servicer's business practices or procedures. This court reversed, finding that the witness's testimony established the trustworthiness of the documents because the witness testified that Resurgent reviewed the payment histories for accuracy before integrating them into its own records.

Similarly, in *Deutsche Bank Trust Co. Americas v. Frias*, 178 So.3d 505 (Fla. 4th DCA 2015), the employee of the current servicer testified that all loan events were entered into records by persons familiar with the transaction and that all loans that originated with other servicers went through a series of "test regions" to verify the accuracy of the information from the prior servicer. Despite this testimony, the trial court refused to admit any records that originated with a prior servicer. This court reversed, finding that although the witness did not work for the prior servicers, she provided testimony establishing that the prior servicers' records complied with the business records exception requirements and were checked for accuracy when the loans were acquired by the current servicer.

■ Like in *Calloway* and *Frias*, the trial court in the instant case abused its discretion by excluding the mortgage records Ocwen sought to introduce as evidence at trial. Contrary to the trial court's impression, it was not necessary for Whittaker to have personal knowledge of GMAC's business practices or to have participated in the boarding process. Whittaker demonstrated sufficient familiarity with the boarding process to testify about it, and his testimony established the trustworthiness of the documents from the prior servicer. Specifically, Whittaker testified that Ocwen verified the loan documents it received from the prior servicer through a boarding process that he described. Whittaker explained that the prior servicer's records went "through a strict verification process" with "checks and balances" to verify the accuracy of the records. If the accuracy of the records could not be verified, they would not be entered into Ocwen's system. Whittaker had worked for multiple departments in Ocwen and observed data entry and verifi-

cation of documents firsthand. Thus, Whittaker's testimony satisfied the requirements for admitting the mortgage documents under the business records exception to the hearsay rule and demonstrated knowledge of the accuracy of the records.

In sum, the "looking-glass" screenshot, the loan payment history, the default letter and screen printout with dates it was sent, and the printout of the MERS milestone sheet were admissible evidence and should have been admitted at trial. As such, we reverse the involuntary dismissal and remand for further proceedings.

*Reversed and remanded for further proceedings.*

TAYLOR and KLINGENSMITH, JJ., concur.