DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BANK OF NEW YORK AS TRUSTEE FOR THE
NOTEHOLDERS CWABS INC. ASSETBACKED NOTES,
SERIES 2006-SD4006-SD4,**
Appellant,

v.

**ANDREW CALLOWAY, UNKNOWN SPOUSE OF ANDREW CALLOWAY,
TENANT #1, TENANT #2, TENANT #3, TENANT #4,** and
**LAUREL HILLS NEIGHBORHOOD ASSOCIATION
INCORPORATED DISSOLVED,**
Appellees.

No. 4D19-584

[July 15, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Edward L. Artau, Judge; L.T. Case No. 502008CA004784XXXXMB.

Brian A. Wahl of Bradley Arant Boult Cummings LLP, Birmingham, Alabama, for appellant.

Geoffrey E. Sherman and Roy D. Oppenheim of Oppenheim Pilelsky, P.A., Weston, for appellee Andrew Calloway.

KUNTZ, J.

Bank of New York, as Trustee for the Noteholders CWABS Inc. Assetbacked Notes, Series 2006-SD4006-SD4, appeals the circuit court's order finding the Bank of New York lacked standing and granting involuntary dismissal. We reverse.

### Background

Andrew Calloway signed a note and mortgage, borrowing money from USMoney Source, Inc., d/b/a Soluna First.

USMoney, the original lender, executed a blank endorsement on an allonge to the note. The endorsement referenced the borrower, loan number, and the date it was signed.

The allonge also contained two other endorsements. First, an officer of Countrywide Bank, N.A. endorsed the note in favor of Countrywide Home Loans, Inc. Then, an officer of Countrywide Home Loans, Inc. endorsed the note in blank. Neither Countrywide endorsement was dated.

After the original lender endorsed the note in blank, several parties— CWABS, Inc., the CWABS Asset-Backed Notes Trust 2006-SD4, Countrywide Home Loans, Countrywide Home Loans Servicing LP, and Bank of New York—entered into a pooling and servicing agreement ("PSA"). Under this PSA, Countrywide Home Loans, Inc. conveyed the mortgage loans identified as covered by the PSA to CWABS, which then sold the subject loans to the CWABS Asset-Backed Notes Trust 2006-SD4. Within the PSA, Countrywide Home Loans and CWABS affirmed that they had the original note for each note listed and that each note would be endorsed in blank.

The list of loans attached to the PSA specifically included Calloway's loan.

After Calloway allegedly defaulted on the note, Bank of New York filed a verified foreclosure complaint. Attached to the complaint was a copy of the note including the allonge from the original lender. But the endorsements from Countrywide Bank and Countrywide Home Loans did not appear on the copy.

After a bench trial, the court entered judgment for Calloway, finding the Bank's evidence regarding the prior servicers' business records were inadmissible. We reversed, holding that the business records were admissible. *See Bank of N.Y. v. Calloway*, 157 So. 3d 1064, 1074 (Fla. 4th DCA 2015).

On remand, the circuit court held a bench trial over multiple days. At trial, a foreclosure litigation specialist for Bank of New York's servicer testified. She testified that her employer, Shellpoint Mortgage Servicing, used Lender Processing Services and Interlink Lender Services to maintain documents, comments, servicing notes, and data relating to the loan. She testified that when Shellpoint took over servicing a loan, it requested the PSA from the trustee. It then compared the data in the PSA with the loan documents; she explained: "And [at] each level of boarding[,] we confirm that the loans that are coming in with the pool are listed on the mortgage

loan schedule that accompanies the PSA, that the loans closed before the closing date on the PSA."

The litigation specialist described Shellpoint's multi-step process. First, Shellpoint received a data transfer of information regarding loans and documents coming in. A couple of weeks later, it received a pool of loans. Finally, the Bank transferred more specific information to Shellpoint, and Shellpoint compared the newly transferred information with the first batch of information in what was called a "data scrub." An auditing process ensured the data was entered into the system correctly.

The litigation specialist also testified that a mortgage loan schedule was attached to the PSA. The mortgage loan schedule included a loan matching Calloway's loan number, interest rate, and payment amount.

A member of Bank of America's consumer resolution team also testified. Countrywide hired him in 2008. During his employment, the bank's name changed multiple times, ultimately becoming Bank of America. The employee testified that the trustee received the original note in 2006, well before the complaint was filed in 2008. He also testified that when the note was delivered to the trustee, it was "investor qualified," meaning it met the criteria for a pooling and servicing agreement.

The court granted Calloway's motion for involuntary dismissal. It noted that the copy of the note filed with the original complaint included a blank endorsement, but the original note introduced at trial included two later endorsements. The court also found that Bank of New York failed to provide competent, substantial evidence establishing when the other endorsements were placed on the note.

### *Analysis*

Bank of New York argues the court erred when it granted an involuntary dismissal in favor of Calloway. We agree and reverse.

"A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose." *Caraccia v. U.S. Bank, Nat'l Ass'n,* 185 So. 3d 1277, 1278 (Fla. 4th DCA 2016) (quoting *McLean v. JP Morgan Chase Bank Nat'l Ass'n,* 79 So. 3d 170, 173 (Fla. 4th DCA 2012)). "[S]tanding may be established from a plaintiff's status as the note holder, regardless of any recorded assignments." *McLean,* 79 So. 3d at 173 (citation omitted). A note that does not name the plaintiff as a payee must include either a special endorsement in the plaintiff's name or a blank endorsement. *Id.* (citations

omitted). "A holder is 'the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.'" *Caraccia,* 185 So. 3d at 1279 (quoting § 671.201(21)(a), Fla. Stat. (2013)).

Here, Bank of New York alleged that it was the holder of the mortgage and the note. But because the copy of the note, filed with the complaint, included a blank endorsement and the original note, introduced at trial, included two later endorsements, the circuit court involuntarily dismissed the complaint.

A plaintiff may establish standing to foreclose in more than one way. It is true that attaching a copy of a note endorsed in blank and later filing the original note, identical to the copy, is one method of establishing standing. *See, e.g., Fed. Nat'l Mortg. Ass'n v. Rafaeli,* 225 So. 3d 264, 268 (Fla. 4th DCA 2017) (citing *Ortiz v. PNC Bank, Nat'l Ass'n,* 188 So. 3d 923 (Fla. 4th DCA 2016)). But it is not the only way.

A holder, at trial, can also present the original note endorsed to it with evidence establishing when the endorsement was placed on the note. *See Corrigan v. Bank of Am., N.A.,* 189 So. 3d 187, 190 (Fla. 2d DCA 2016). *But see Focht v. Wells Fargo Bank, N.A.,* 124 So. 3d 308, 312 (Fla. 2d DCA 2013) (Altenbernd, J., concurring) (on the requirement to establish standing when a foreclosure complaint is filed, commenting that "[t]he courts have erroneously transformed what should be a defendant's affirmative defense . . . into a jurisdictional prerequisite that must be established by the plaintiff to avoid a dismissal of the action"). Alternatively, a plaintiff may present "proof of valid, timely assignments of the note and mortgage." *Nationstar Mortg., LLC v. Kelly,* 199 So. 3d 1051, 1052 (Fla. 5th DCA 2016).

Relevant to this case, reliance on a pooling and servicing agreement is yet another method of proving standing. *See, e.g., HSBC Bank USA, Nat'l Ass'n for Fremont Home Loan Tr. 2006-C v. Alejandre,* 219 So. 3d 831, 832 (Fla. 4th DCA 2017); *Bolous v. U.S. Bank Nat'l Ass'n,* 210 So. 3d 691, 692 (Fla. 4th DCA 2016).

In *Bolous,* the bank filed a foreclosure complaint alleging it owned and held the note and mortgage. 210 So. 3d at 692. The bank later amended the complaint to allege it was the holder of the note entitled to enforce the note because it was in possession of the blank-endorsed note. *Id.* An allonge, with the original lender's undated blank endorsement, was attached to the amended complaint. *Id.*

4

The servicer's loan analyst testified that the note moved from the bank to the trust in 2005. *Id.* The analyst also identified the pooling and servicing agreement and mortgage loan schedule, testifying that the mortgage loan schedule attached to the pooling and servicing agreement included the borrower's loan. *Id.* at 692–93.

Even though "the note attached to the original complaint was not endorsed, the later-filed blank-endorsed allonge was undated, and the bank's witness did not know when the allonge was created," *id.* at 693, we held that the bank's evidence was sufficient to establish standing because "the pooling and servicing agreement's terms, along with its corresponding mortgage loan schedule and the other evidence presented through the analyst . . . demonstrate[d] that the bank was the owner or holder of the note at the time it filed the original complaint," *id.* at 695. We did not rely exclusively on the pooling and servicing agreement, but we accepted the bank's use of that document, together with other evidence, to prove standing. *See id.* at 692–93.

Similarly, in *Alejandre*, the bank introduced the pooling and servicing agreement at trial to prove standing. 219 So. 3d at 832. In that case, the pooling and servicing agreement identified the bank as the trustee and contained language indicating that the note endorsed in blank was transferred into the trust. *Id.* The bank's witness also testified that the borrower's note was in the trust. *Id.* We held this was sufficient to establish the bank's standing. *Id.*

These cases demonstrate that a pooling and servicing agreement can be used to establish a plaintiff's standing when a mortgage foreclosure lawsuit is filed. *See Alejandre*, 219 So. 3d at 832; *Bolous*, 210 So. 3d at 695; *see also Deutsche Bank Nat'l Tr. Co. v. Marciano*, 190 So. 3d 166, 168 (Fla. 5th DCA 2016).

That is what occurred in this case. Here, Bank of New York's witness testified that Bank of New York's custodian received the original unrecorded note before the lawsuit was filed. A separate witness authenticated the PSA and testified that it included this loan.[1] In fact, the mortgage loan schedule, attached to the PSA, specifically referenced Calloway's loan.

---

[1] The authentication of the PSA here distinguishes it from cases like *Madl v. Wells Fargo Bank, N.A.*, 244 So. 3d 1134 (Fla. 5th DCA 2017), where the pooling and servicing agreement was not authenticated.

Based on the authenticated PSA and the other evidence introduced at trial, Bank of New York proved it had standing to foreclose.

### *Conclusion*

The circuit court's involuntary dismissal is reversed, and the case is remanded for further proceedings.

*Reversed and remanded.*[2]

WARNER and DAMOORGIAN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[2] We are mindful of the issuance of Executive Order 20-159 (extending, until 12:01 a.m. on August 1, 2020, Executive Order 20-94, which suspends and tolls any statute providing for a mortgage foreclosure cause of action under Florida law). We trust any motions directed to this order shall be filed in the lower tribunal upon issuance of our mandate.