# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

JAMES DANIEL WALLACE and
ALICE SEDENA ALLEN,

Appellants,

v.

NATIONSTAR MORTGAGE LLC d/b/a
MR. COOPER, SUCCESSOR BY
MERGER TO PACIFIC UNION
FINANCIAL, LLC,

Appellee.

No. 2D23-926

_____

January 17, 2024

Appeal from the Circuit Court for Pinellas County; Thomas M.
Ramsberger, Judge.

Malcolm E. Harrison and Michelle Moore of Law Office of Malcolm E.
Harrison, P.A., Wellington, for Appellants.

Amber Kourofsky of Troutman Pepper Hamilton Sanders LLP, Atlanta,
Georgia; and Alec Hayes of Troutman Pepper Hamilton Sanders LLP,
Atlanta, Georgia (substituted as counsel of record) for Appellee.


MORRIS, Judge.

James Wallace and Alice Allen (the borrowers) appeal a final

judgment of foreclosure entered against them and in favor of Nationstar

Mortgage LLC after a bench trial. We reverse the final judgment because the trial court erred in admitting an inadmissible business record that constituted the only evidence that Nationstar had complied with a condition precedent to filing suit.

The borrowers executed a note and mortgage in August 2017. The holder of the note, Pacific Union Financial, LLC, filed a foreclosure complaint against the borrowers in August 2018, alleging that the borrowers had defaulted on their loan in March 2018. Pacific Union later merged with Nationstar. After a bench trial in November 2022, the trial court entered a judgment of foreclosure in favor of Nationstar in April 2023.

On appeal, the borrowers raise several issues. We find merit only in their argument that the trial court erred in admitting a record that was inadmissible under the business records hearsay exception to show that Nationstar fulfilled a condition precedent to foreclosure.

In their answer to the complaint, the borrowers asserted that Nationstar failed to comply with 24 CFR § 203.604 (2018), a condition precedent to foreclosure of their FHA loan. That regulation provides in relevant part:

> (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . . .
> (c) A face-to-face meeting is not required if:
> . . . .
> > (5) A reasonable effort to arrange a meeting is unsuccessful.

2

(d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

24 CFR § 203.604.[1] "[A] mortgagee's ability to foreclose upon an FHA-backed loan is cabined by these federal regulations." *Kuhnsman v. Wells Fargo Bank, N.A.*, 311 So. 3d 980, 981-82 (Fla. 2d DCA 2020). "[T]he face-to-face interview [is] a condition precedent to foreclosure." *Id.* at 984 (relying on *Derouin v. Universal Am. Mortg. Co.*, 254 So. 3d 595 (Fla. 2d DCA 2018)). However, "a lender complies with the regulation [requiring a face-to-face interview], despite not conducting the interview, so long as it demonstrates its 'reasonable efforts' to do so." *Id.* at 985. As laid out in § 203.604(d), a "reasonable effort" consists of one letter sent to the mortgagor and at least one trip to see the mortgagor at the property. *See Kuhnsman*, 311 So. 3d at 982 (quoting § 203.604(d)).

The dispute in this case centers on whether a trip was made to see the borrowers at their home. At trial, Nationstar introduced a record to

---

[1] Here, the borrowers raised noncompliance with § 203.604(b) as both a specific denial and an affirmative defense. *See Derouin v. Universal Am. Mortg. Co.*, 254 So. 3d 595, 600 (Fla. 2d DCA 2018) (deciding to not weigh in on the conflict of "whether noncompliance with the regulations must be raised as an affirmative defense or as a specific denial in an answer" because the borrowers raised noncompliance as both an affirmative defense and a specific denial); *see also Kuhnsman v. Wells Fargo Bank, N.A.*, 311 So. 3d 980, 984 (Fla. 2d DCA 2020) ("Indisputably, the [borrowers] challenged Wells Fargo's compliance with the face-to-face interview requirement. Consequently, regardless of whether the requirement was raised as an affirmative defense or as a specific denial, the parties teed up the issue.").

show that a field agent conducted a trip to the borrowers' home.  The record is a document titled "Pacific Union F2F Results."  The document notes that contact was attempted but was not made with the borrowers at their home on April 25, 2018, at 7:22 p.m.  The borrowers' counsel objected to this document on the basis of hearsay, lack of foundation, and lack of personal knowledge.  He argued that the witness, an employee for Nationstar, was unable to explain how the field agent notes were verified and that the record was therefore not trustworthy.  The trial court ruled that the record was admissible based on the "onboarding process as testified by the witness."

"The standard of review for the admissibility of evidence is abuse of discretion."  *Deutsche Bank Nat'l Tr. Co. v. Sheward*, 245 So. 3d 890, 892 (Fla. 2d DCA 2018) (first citing *Channell v. Deutsche Bank Nat'l Tr. Co.*, 173 So. 3d 1017, 1018 (Fla. 2d DCA 2015); and then citing *Bayview Loan Servicing, LLC v. Kay*, 227 So. 3d 779, 781 (Fla. 1st DCA 2017)). But "the question of whether evidence meets the statutory definition of hearsay is a matter of law and thus subject to de novo review."  *Id.* (citing *Burkey v. State*, 922 So. 2d 1033, 1035 (Fla. 4th DCA 2006)).

> To be admissible [as business records under section 90.803(6)(a), Florida Statutes], the movant is required to establish the following:
> > (1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record.
>
> *Yisreal v. State*, 993 So. 2d 952, 956 (Fla. 2008) (citing *Jackson v. State*, 738 So. 2d 382, 386 (Fla. 4th DCA 1999)).
> Additionally, in those instances where a business takes custody of another business's records and integrates them within its own records, "the acquired records are treated as

4

having been 'made' by the successor business, such that both records constitute the successor business's singular 'business record.' " *Bank of N.Y. v. Calloway*, 157 So. 3d 1064, 1071 (Fla. 4th DCA 2015) (quoting *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007)). "[A] witness can lay the foundation for business records of another company," *Bayview Loan Servicing*, 227 So. 3d at 781, and "[t]here is no requirement that the records custodian have personal knowledge of the manner in which the prior servicer maintained and created its business records." *Sas v. Fed. Nat'l Mortg. Ass'n*, 165 So. 3d 849, 851 (Fla. 2d DCA 2015) (citing *WAMCO XXVIII, Ltd. v. Integrated Elec. Env'ts, Inc.*, 903 So. 2d 230, 233 (Fla. 2d DCA 2005)). What is required, however, is independent verification of the loan payment history. *WAMCO XXVIII*, 903 So. 2d at 233; *Holt v. Calchas, LLC*, 155 So. 3d 499, 504 (Fla. 4th DCA 2015). A successor business may establish the trustworthiness of records "by independently confirming the accuracy of the third-party's business records upon receipt." *Bank of N.Y.*, 157 So. 3d at 1072.

*Id.* at 893 (second and third alterations in original) (holding that witness's "testimony set forth the procedures utilized by [servicer] to independently verify the accuracy of the payment history records from the prior loan servicer" and that trial court therefore erred in excluding payment history).

A record does not constitute an admissible business record if "the sources of information or other circumstances show lack of trustworthiness." § 90.803(6)(a), Fla. Stat. (2022).

Given this trustworthiness threshold, mere " 'reliance by the [incorporating business] on records created by others, although an important part of establishing trustworthiness, without more is' " insufficient. *State v. Fitzwater*, 122 Hawai'i 354, 227 P.3d 520, 532 (2010) (quoting 2 Kenneth S. Broun et al., *McCormick on Evidence* § 292, at 318 (6th ed. 2006)). In most instances, a proponent will clear this hurdle by providing evidence of a business relationship or contractual obligation between the parties that ensures a substantial incentive for accuracy. *See, e.g., Matter*

*of Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981) ("[B]usiness records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations." (citations omitted)); *White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1061 (W.D. Mo. 1985) (finding the "indicia of trustworthiness" apparent "where the reporting duty arises by way of a continuing business relationship between two independent business entities"). In the alternative—as tacitly applied in *WAMCO*—the successor business itself may establish trustworthiness by independently confirming the accuracy of the third-party's business records upon receipt. *See, e.g., Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 243 (Tex. App.-Houston [1 Dist.] 2010) ("[A] document created by one business may become the records of a second business if the second business 'determines the accuracy of the information generated by the first business.' " (quoting *Martinez v. Midland Credit Mgmt., Inc.*, 250 S.W.3d 481, 485 (Tex.App.-El Paso 2008, no pet.))).

*Calloway*, 157 So. 3d at 1071-72 (alterations in original).

Courts have held that records from a prior servicer or bank are admissible as business records when the witness for the current servicer or bank specifically testifies regarding the current servicer's or bank's process of verifying the information from the prior servicer or bank. *See, e.g., WAMCO XXVIII*, 903 So. 2d at 233 (holding that the loan payment histories of a prior servicer are admissible under section 90.803(6) when they are relied on by a successor servicer who establishes that it independently verified the accuracy of the payment histories and its verification procedures demonstrate that the records are trustworthy); *Azran Miami 2 LLC v. Deutsche Bank Nat'l Tr. Co.*, 282 So. 3d 924, 927 (Fla. 3d DCA 2019) ("The Bank's witness, the records custodian from Select Portfolio Servicing, testified that as his company was the subsequent servicer of the mortgage, that he was familiar with the Bank's boarding process, and that the records were verified and boarded

6

accordingly. . . . The circumstances of the loan transfer itself would have been sufficient to establish trustworthiness given the business relationships and common practices inherent among lending institutions acquiring and selling loans." (citing *Calloway*, 157 So. 3d at 1073)); *Le v. U.S. Bank*, 165 So. 3d 776, 778 (Fla. 5th DCA 2015) ("Although there was no testimony that [the witness] worked for the prior servicer, she testified that she was familiar with industry standards in recording and maintaining the records and that the records received from the prior servicer were tested for accuracy and compliance with industry standards via a boarding process before the information was input into SLS's system. She was able to testify regarding the specifics of SLS's verification process. This was sufficient evidence of the records' trustworthiness.").

Here, the witness testified that he was familiar with the system used by Nationstar to service its loans, including the instant loan. He also testified regarding the onboarding process used when Nationstar acquires a loan from another servicer. Those records are relied upon by Nationstar, and those records are checked for accuracy and to confirm that they conform to industry standards. As for the instant loan, Nationstar "went through the onboarding process and . . . did not see any issues, and so there was no remedial process engaged in because no issues were found."

However, the witness admitted that the field call notes were not created by Nationstar or its predecessor, Pacific Union. Rather, the field call notes came from one of Pacific Union's vendors, JM Adjustment Services (JMA). The witness had never worked for JMA, had never been trained by JMA, and was not familiar with the recordkeeping or policies and procedures of JMA. The witness agreed that when Nationstar

onboards loan histories from prior servicers, it verifies the accuracy of the loan histories, normally checking the figures mathematically. He agreed that the field call notes could not be verified mathematically: "[T]he information that we receive from prior servicers is not always mathematical information. We do review their business practices about record creation and maintenance and relationships with vendors and servicing of the loans that they have, in addition to reviewing the information that we received from them." The witness could not point to any records demonstrating that Nationstar independently verified the information in the field call notes. He went on:

> I do know that our boarding process requires communication with prior servicers and we search our due diligence about their business practices, which would have included this type of information. But as far as whether someone picked up the phone or sent an email to JMA, I could not attest to that.

This case is distinguishable from those cases that generally allow the admission of records of a prior servicer based on witness testimony from the successor servicer regarding the onboarding process of the loan records. Here, Nationstar relied on business records of Pacific Union, a third party, which include a record of a fourth party. And this record was not being relied upon to show a figure verifiable through the prior servicer's records, such as amount due on the loan or payment history. Rather, this record purportedly documented an event that was offered to prove compliance with a condition precedent. The witness was unable to testify regarding Pacific Union's relationship with the vendor, JMA, that would ensure the accuracy of the record, and the witness did not establish that Nationstar verified the accuracy of this document when it obtained the loan records from Pacific Union. Further, the witness's testimony regarding the general onboarding process of Pacific Union's records was not sufficient to prove that the record created by JMA was

8

admissible under the business records exception. Accordingly, the trial court erred in finding that the "onboarding process as testified by the witness" was sufficient to satisfy the business records exception to hearsay.

Without the record introduced by Nationstar, Nationstar was unable to show compliance with § 203.604, a condition precedent to foreclosure. Accordingly, we reverse the final judgment entered in Nationstar's favor and remand for the trial court to enter judgment in favor of the borrowers. *See Mace v. M&T Bank*, 292 So. 3d 1215, 1224 n.3 (Fla. 2d DCA 2020) ("In nonjury cases where a party has not moved for involuntary dismissal but nonetheless shows on appeal that the evidence is insufficient to support the judgment, *see* Fla. R. Civ. P. 1.530(e), the correct instruction would be to enter a judgment in favor of the appellant, *see Winchel v. PennyMac Corp.*, 222 So. 3d 639, 646 n.5 (Fla. 2d DCA 2017)."). [2]

Reversed and remanded.

NORTHCUTT and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

---

[2] The borrowers argue on appeal that a final judgment should be entered in their favor. At the bench trial, they argued that Nationstar was not entitled to a foreclosure judgment; they did not move for an involuntary dismissal.

9