DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DYCK-O'NEAL, INC.,**
Appellant,

v.

**RUDOLPH HERMAN,**
Appellee.

No. 4D19-3311

[November 12, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. CACE14011075.

David M. Snyder of David M. Snyder, P.A., Tampa, and Joshua D. Moore of Law Offices of Daniel C. Consuegra, Tampa, for appellant.

No appearance for appellee.

GERBER, J.

The appellant, which was assigned the rights of the foreclosure judgment creditor against the borrower, appeals from the circuit court's final judgment in the borrower's favor after a non-jury trial on the appellant's action to recover a deficiency judgment against the borrower. The appellant argues the circuit court improperly relied on the borrower's unsworn statements and unauthenticated evidence and, as a result, reversibly erred in entering a final judgment in the borrower's favor. We agree with the appellant's argument and reverse for a new trial.

### *Procedural History*

The appellant's complaint, filed in 2014, alleged as follows. In April 2009, the circuit court entered a foreclosure judgment in the lender's favor and ordered the borrower's property be sold. The foreclosure judgment amount was $286,747.65. In June 2009, the property was purchased at the foreclosure sale for $100.00. At the time of the foreclosure sale, the property had a value of $55,000, according to an appraisal attached to the complaint. In 2013, the lender's interest in the

judgment was assigned to the appellant. According to the appellant, based on the foreclosure judgment amount minus the property's value, the appellant was owed a deficiency of $231,747.65.

The pro se borrower filed a motion to dismiss, though the motion's substance was in the form of an answer. The borrower disputed that the property's value was only $55,000, and alleged the property was worth a minimum of $200,000. In support, the borrower attached a copy of a purported Form 1099-A which the lender sent him in 2009, indicating the property's value at that time was $295,803. Thus, the borrower alleged, no deficiency existed.

After a hearing, the circuit court entered an order denying the borrower's motion to dismiss, but treating the motion as the borrower's answer, and deeming it filed.

The borrower later hired counsel who, with leave of court, filed an amended answer and affirmative defenses. The only portion of the amended answer which is relevant in this appeal is the borrower's continued denial that the property's value was $55,000 as indicated in the 2009 appraisal. The borrower continued to allege the property's 2009 value was $295,802.80 as indicated in the Form 1099-A which the lender provided to the borrower.

The circuit court set the case for a non-jury trial. Just before trial, the appellant filed a motion in limine seeking to exclude, among other exhibits, the Form 1099-A which the lender allegedly issued to the borrower. The motion argued the court should exclude the exhibits because, among other reasons, the exhibits were inadmissible hearsay not covered by any hearsay exception, and were not authenticated.

Also just before trial, the borrower's counsel filed a motion to withdraw. On the day of trial, the circuit court granted the motion to withdraw. The non-jury trial proceeded as scheduled with the borrower agreeing to represent himself.

### *The Non-Jury Trial*

The appellant and the borrower stipulated to the admission into evidence of the lender's underlying 2009 final judgment against the borrower, the certificate of title issued after the 2009 foreclosure sale, and the county property appraiser's sale history for the property.

2

The appellant then raised its motion in limine to exclude certain exhibits, including the Form 1099-A which had been referred to in the borrower's answer and amended answer. The circuit court and the appellant's counsel had the following discussion:

> COURT: Let me ask you, tell me how [the appellant is] prejudiced if it was [the appellant's] predecessor in interest who issued [the Form 1099-A]?
>
> APPELLANT'S COUNSEL: Well, Your Honor, I think it's certainly unauthenticated at the very least.
>
> COURT: Do you have any doubts that [the Form 1099-A] was issued?
>
> APPELLANT'S COUNSEL: No, Your Honor.
>
> ....
>
> COURT: Okay. Anything else with regard to the motion in limine as to the 1099?
>
> APPELLANT'S COUNSEL: No, Your Honor.
>
> COURT: Okay. I will deny [the motion in limine].

The appellant's counsel requested to introduce the three stipulated exhibits referenced above. The circuit court agreed.

The appellant's counsel then called as a witness the appraiser who performed the 2009 appraisal of the property. The appraiser testified she had inspected the property's interior, examined comparable properties, and determined the property's value to be $55,000 as of April 21, 2009. The appraiser said that value would remain valid for six months, including June 18, 2009 (the date on which the foreclosure judgment was entered). The appellant's counsel moved the appraisal into evidence, without objection. The appraisal concluded that the property was a vacant one-unit 1,574 square foot ranch home built in 1964 with two bedrooms and two bathrooms, which the appraiser valued at $55,000 by using a comparable sales approach.

During cross-examination, the pro se borrower began by making unsworn lengthy statements directed at the appraiser, disputing the appraiser's conclusions. The borrower stated that the property contained

two units, and therefore the appraiser erred in comparing the sales of one-unit properties. The borrower further stated that the property generated anywhere between $2,000 and $2,200 per month in rental income. The borrower also stated that based on his personal knowledge of having lived in the property's neighborhood since 1966 and serving as president of the neighborhood's homeowners' association, the appraiser undervalued the property.

The court directed the pro se borrower to phrase his statements in the context of questions. The following discussion then occurred:

> BORROWER: How did you come up with -- when you said that you inspected this home, that it was only a one unit home, a single-family home and not two units, why did you do comps -- two part question -- why did you do comps on single-family residential homes and not duplexes?
>
> APPRAISER: Because it is actually a single-family home, it's listed in the public records as one unit. If you look at the zoning, the zoning only permits -- if you do the math, I think it was RD 10 zoning [classification], you know -- excuse me, 10 years ago was a long time. I don't even remember this inspection, okay? But I am telling you that it is actually a one unit and it's only permitted to have one unit. I believe there was, you know, two kitchens, there was a carport conversion, I think, but it was not legal. It's not legal to do that to [that property] and I made notes on the report that [there] were possible, you know, code violations --
>
> BORROWER: Okay. I am a general contractor --
>
> APPRAISER: -- thus, I comped it to single-family homes.
>
> BORROWER: I am a general contractor by trade, I put 20% into every one of these homes, I have the city of Fort Lauderdale, code enforcement, everybody, I know all of those people. This was perfectly legal, the owner … that sold me this home -- it's a perfectly legal home and just because -- I am saying about your knowledge of the area, [zoning classification] RD gives you cluster homes, it is the widest range of what you can do with a home. This home is a two unit home.
>
> APPRAISER: Well, it's listed in public records as a one unit.

BORROWER: Let me see. Your Honor, I really don't have any more questions for [the appraiser]. I just wanted to point out the fact that the zoning allows for what [the property] is. I owned 11 homes in that area, I lost them all. I got judgments on all of them and none of them sold for -- or were listed to this [$55,000] amount that [the appraiser] had. That's all I have, Your Honor.

The appellant called its foreclosure manager as its next witness. Through the foreclosure manager's testimony, the appellant moved into evidence, without objection, the lender's assignment of its judgment against the borrower to Fannie Mae; the later assignment of judgment and limited power of attorney from Fannie Mae to the appellant; and the appellant's calculation of the borrower's debt payoff amount, as of the date of trial, of $326,935.62.

At the beginning of cross-examination, the borrower asked, "Your Honor, how do I submit these as exhibits? The two 1099s, excuse my ignorance, and the judgment from this property against me." The circuit court replied, "I will tell you -- well, I guess you can start by asking [the foreclosure manager] if he is familiar with either one." The following discussion then occurred:

BORROWER: I have a 2009, 1099 from [the lender]. ... My question to you is, how do you come up with ... $326,000 and the [1099] here says ... [f]air market value is $295,000 and the balance of principal owed is $260,000. How do you come up with [$326,935.62]?

APPELLANT'S COUNSEL: Your Honor, objection. [The appellant] did not prepare the 1099.

BORROWER: I wasn't asking him about the 1099, Your Honor. I am asking about how [the appellant] came up with [its] numbers –

COURT: Overruled.

BORROWER: -- so that I can submit [the 1099s]. That's really the only question. May I submit these [1099s] as exhibits?

COURT: You will have an opportunity to give your side of the case.

....

BORROWER [to the witness]: The 1099 says that the property is valued at $295,802.80. You quoted that the – the amount owed after taxes was $326,000. Now, based on my putting 20% cash down on this property, do you think that your numbers are accurate?

APPELLANT'S FORECLOSURE MANAGER: I believe they are, yes.

BORROWER [to the court]: I am satisfied with the answer, Your Honor.

The appellant's counsel indicated he had no re-direct examination. However, the circuit court then began asking its own questions to the appellant's foreclosure manager:

COURT: One second, please. [Appellant's foreclosure manager], what's your understanding of a 1099-A?

APPELLANT'S FORECLOSURE MANAGER: 1099-A is required by the IRS to all lending services when there is a foreclosure .... Banks charge off loans, you charge off a loan for your internal record keeping and for the regulators so they do not -- it cannot be listed as an asset above the amount you charged it down so you charge down the loan to that and the IRS requires that you issue a 1099 on that amount.

....

COURT: How would that work in this instance?

....

APPELLANT'S FORECLOSURE MANAGER: The lender -- the lender would've written it down. Eventually, they have written it down enough that probably -- it became insolvent and they closed the bank.

6

COURT: … I assume you don't have any specific knowledge as to what happened in this instance; is that correct?

APPELLANT'S FORECLOSURE MANAGER: No, sir. I do not.

COURT: Okay. And typically, where would a lender look to or how would they determine the fair market value that appears on a 1099-A?

APPELLANT'S FORECLOSURE MANAGER: … [Y]ou had to have an appraisal and you have to have an appraisal every six months once you were in a declining market and we did do that every six months up until the time that the property is actually foreclosed ….

Neither the appellant nor the borrower objected to the circuit court having asked its own questions. Instead, the appellant's counsel conducted the following re-direct examination:

APPELLANT'S COUNSEL: The testimony that you just gave the Court, was that based on your knowledge as a representative of [the appellant] or your knowledge of banks in general prior to your employment at [the appellant]?

APPELLANT'S FORECLOSURE MANAGER: Banks in general and with my experience with the FDIC.

APPELLANT'S COUNSEL: Certainly. So would it be fair to say that the testimony that you gave was … speculative in relation to the current action?

APPELLANT'S FORECLOSURE MANAGER: To an extent. I do not know the exact details of this 1099.

The appellant then rested.

The borrower chose to testify. The circuit court swore in the witness. (T. 42). The following discussion then occurred:

BORROWER: As I stated, Your Honor … I purchased approximately 14 homes in [this] area at the time. Each home I put down 20% cash out of my pocket on these properties. At no time ever were these properties, any one, underneath $200,000 at the time of the purchase. When

7

they issued my 1099 for this property, the amount listed on it, balance due is $260,000 –

APPELLANT'S COUNSEL: [The borrower] is reading from a document that is not in evidence.

BORROWER: Your Honor, can I submit these documents as evidence?

COURT: Let's take them one at a time. Which one would you like to start with?

BORROWER: I would like to start with [the lender's] 1099-A.

....

COURT: [Appellant's counsel], tell me why you object.

APPELLANT'S COUNSEL: Your Honor, the document is unauthenticated, he didn't prepare it, he hasn't brought in a witness to testify about the estimate's numbers and/or the item's authenticity, Your Honor. Additionally, it's my contention that it is hearsay but I understand -- I think I understand Your Honor's position on that.

COURT: Okay. [Borrower], did you receive that 1099 from … your lender?

BORROWER: Yes, sir. I did. Both of them, I have two.

COURT: You have two 1099s?

BORROWER: I have two, yes, sir. They have $0.20 difference, they rounded up the dollar. If I may also enter this –

....

APPELLANT'S COUNSEL: Your Honor, as I mentioned, there hasn't been a witness ….

....

COURT: Okay. Very well. Presumably, it was your document to begin with. I will overrule the objection and admit both 1099s as Defendant's Exhibit[s] 1 and 2.

The appellant's counsel chose not to cross-examine the borrower.

The circuit court asked the parties to present closing arguments. Immediately after the appellant's counsel began arguing that the appellant had met its burden of proof, the circuit court interrupted and asked, "I am curious about the … 1099-A issue. … Tell me why that should not act as some type of estoppel." The appellant's counsel immediately provided the circuit court with a Second District case (not identified in the record) outlining the elements of an equitable estoppel defense. The following discussion then occurred:

APPELLANT'S COUNSEL: … Here, Your Honor, we don't have equitable estoppel that is set forth as an affirmative defense, it's essentially [an accord and] satisfaction.

COURT: Well, we have a 1099 listed as a third defense, don't we?

APPELLANT'S COUNSEL: Sure, I think it's an [accord and] satisfaction defense so the elements are going to be different but, Your Honor, I think that the point is the same. It's not enough to allege that the 1099 was issued, you've got to allege that it was issued and that there is some prejudice through the issuance of the 1099. Additionally, Your Honor, it's my contention, like I said – and I know that Your Honor has made his ruling but – but Your Honor, it's also my contention that pursuant to [section] 90.901[, Florida Statutes], the 1099 is unauthenticated. …

The appellant's counsel then presented the circuit court with a case from this court, *Vantium Capital, Inc. v. Hobson*, 137 So. 3d 497 (Fla. 4th DCA 2014), to argue:

APPELLANT'S COUNSEL: [T]he secured party has the initial burden of proving that the fair market value was less than the total debt determined by the final judgment. However, a legal presumption exists that the foreclosure sale price equals the fair market value of the property. Therefore, once the party seeking a deficiency introduces evidence of the foreclosure sale price, the burden shifts to the judgment

9

debtor to present evidence concerning the property's fair market value. So, Your Honor, in this case the foreclosure sale price was $100 and I am not going to sit here, Your Honor, and allege that $100 is the fair market value of the property but the property did sell, I think it was three months later for $52,500. I have also got an appraisal from the time of the sale and the appraiser testified that the value at the time of the appraisal would've been the same as the value at the time of the foreclosure sale. That puts the fair market value of the property at $55,000. I have got an expert appraiser attesting to the fair market value of the property and [the borrower has] an unauthenticated [1099-A] alleging the fair market value is upwards of $100,000 more than what it is. ...

....

COURT: Actually, I'm looking at [a 1099-A] that says 295, I think.

APPELLANT'S COUNSEL: I am sorry, Your Honor. I was looking [at the wrong box]. So yeah, $295,802.80. So, Your Honor, I don't think that the [borrower] has met his burden to prove the fair market value of the property to show that it's substantially dissimilar to what our expert has testified to and in addition to what the property sold for just three months after the foreclosure sale.

The borrower then very briefly stated his closing argument:

I have already testified to the fact of [the appraiser's] knowledge deficit in my particular area and the residential homes and at the time that the 1099 and the foreclosure took place in 2009, the property was in great shape. It laid vacant until it went through the system and that's when it degraded but at the time the 1099 came out and I paid taxes, that property was still valued as it is on the 1099-A, sir.

Two days later, the circuit court entered a written final judgment in the borrower's favor and against the appellant, ordering that the appellant shall take nothing by its action. The circuit court based its final judgment on the following findings of fact stated in the judgment:

1. A Final Judgment of Mortgage Foreclosure was entered in favor of [the lender] on April 14, 2009, in the amount of $286,747.65 against the [borrower].

2. The sale price of the property at the foreclosure sale was $100.

3. [The appraiser] appraised the value of the property at $55,000 as of April 21, 2009. [The appraiser] did not have an independent recollection of this appraisal and could not say if the property in question was a two unit property. None of the comparables in her appraisal are two unit properties.

4. In January of 2010 [the lender] caused a 1099-A to be issued to the [borrower] for the 2009 tax year.

5. Two 1099-A(s) were entered into evidence. One 1099-A states that the fair market value of the property is $295,802.80 (Def. Exh. 1). The other 1099-A states that the fair market value of the property is $295,803 (Def. Exh. 2). Both 1099-A(s) listed the lender's acquisition date as June 18, 2009. [The appellant's representative] testified that he had no knowledge regarding the 1099-A(s) issued in this case.

6. [The borrower] testified the property in question is a two unit property. He further testified that he purchased 14 properties in this neighborhood and that none were purchased for less than $200,000.

7. [The appellant] has not proven by the greater weight of the evidence that the fair market value of the property is $55,000.

### *This Appeal*

The appellant's initial brief raises what can be restated as two arguments: (1) the appellant met its burden of proof on the deficiency action to show the foreclosure judgment amount exceeded the fair market value at the time of the foreclosure sale; and (2) the circuit court erred by admitting the unauthenticated 1099-A forms into evidence and relying on the borrower's unsworn statements that the property contained two units, and thus, lacked competent substantial evidence to

find that the value of the property exceeded the balance due on the foreclosure judgment. Based on the foregoing, the appellant argues the circuit court erred by denying the appellant a deficiency judgment and requests us to reverse and remand for a new trial.

The borrower has not filed an answer brief.

We review a circuit court's factual findings for competent substantial evidence. *Elman v. U.S. Bank, N.A.*, 204 So. 3d 452, 455 (Fla. 4th DCA 2016). "The standard of review for admissibility of evidence is abuse of discretion, limited by the rules of evidence. The question of whether evidence falls within the statutory definition of hearsay is a matter of law, subject to de novo review." *Ocwen Loan Servicing, LLC v. Gundersen*, 204 So. 3d 530, 533 (Fla. 4th DCA 2016) (internal citations, quotation marks, and brackets omitted). Further,

> [t]he decision whether to grant or deny a deficiency judgment is reviewed for an abuse of discretion. While ordinarily the granting of a deficiency decree is discretionary with the court, this is not an absolute and unbridled discretion, but a sound judicial discretion, which must be supported by established equitable principles as applied to the facts of the case, and the exercise of which is subject to review on appeal.

*Vantium Capital*, 137 So. 3d at 499 (internal citations and quotation marks omitted); *see also* § 702.06, Fla. Stat. (2019) ("In all suits for the foreclosure of mortgages heretofore or hereafter executed the entry of a deficiency decree for any portion of a deficiency, should one exist, shall be within the sound discretion of the court ....").

"A plaintiff seeking a deficiency must establish '1) entry of final judgment of foreclosure; 2) sale of the foreclosed property pursuant to the judgment; [and] 3) issuance of a certificate of title for the property.'" *Aluia v. Dyck-O'Neal, Inc.*, 205 So. 3d 768, 775 (Fla. 2d DCA 2016) (citation omitted). "A deficiency judgment is calculated by subtracting the fair market value of the property, as determined by the court, from the amount of the final judgment." *Id.* As we explained in *Vantium Capital*:

> Where it is clear that the total debt secured by a lien on property is more than the fair market value of that property at the date of the foreclosure sale, the granting of a deficiency decree is the rule rather than the exception. A

12

deficiency judgment should be granted unless there are facts and circumstances creating equitable considerations upon which a court should deny the deficiency decree in the exercise of its discretion.  When a court does not state any legal or equitable principles justifying an award for less than the full amount of the deficiency, the award is an abuse of discretion.

The secured party has the initial burden of proving that the fair market value of the property was less than the total debt determined by the final judgment.  However, a legal presumption exists that the foreclosure sale price equals the fair market value of the property.  Therefore, once the party seeking a deficiency judgment introduces evidence of the foreclosure sale price, the burden shifts to the judgment debtor to present evidence concerning the property's fair market value.  In the absence of such evidence, the trial court has the power to act upon the assumption that the sale price reflects the fair market value.

137 So. 3d at 499 (internal citations, quotation marks, and brackets omitted.

Here, the circuit court erred in relying on the dollar amounts contained in the 1099-A forms and the borrower's statements that the property contained two units.

Section 90.901, Florida Statutes (2019), provides:  "Authentication or identification of evidence is required as a condition precedent to its admissibility.  The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  As we have explained:

Evidence may be authenticated by appearance, content, substance, internal patterns, or other distinctive characteristics taken in conjunction with the circumstances.  In addition, the evidence may be authenticated either by using extrinsic evidence, or by showing that it meets the requirements for self-authentication.  And, unless clearly erroneous, the trial court's determination must stand.

*Symonette v. State*, 100 So. 3d 180, 183 (Fla. 4th DCA 2012) (internal citations and quotation marks omitted).

Section 90.801(1)(c), Florida Statutes (2019), provides: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Regarding the 1099-A forms, although the circuit court may have been correct in overruling the appellant's authentication objection to the 1099-A forms (because the borrower's testimony that he received the 1099-A forms from the lender supported a finding that the lender in fact issued those 1099-A forms), the circuit court erred in overruling the appellant's hearsay objection to the dollar amounts contained in the 1099-A forms. The dollar amounts were out of court statements being offered for the truth of the matter asserted, and the borrower did not present a witness who had personal knowledge of how the lender determined those dollar amounts to satisfy any hearsay exception. Although the circuit court's comments at trial suggested it was binding the appellant to the dollar amounts' veracity because the lender was the predecessor judgment creditor, i.e., a party admission, none of the categories of describing a party admission under section 90.803(18), Florida Statutes (2019) apply here. Section 90.803(18) describes admissible admissions as:

> A statement that is offered against a party and is:
> (a) The party's own statement in either an individual or a representative capacity;
> (b) A statement of which the party has manifested an adoption or belief in its truth;
> (c) A statement by a person specifically authorized by the party to make a statement concerning the subject;
> (d) A statement by the party's agent or servant concerning a matter within the scope of the agency or employment thereof, made during the existence of the relationship; or
> (e) A statement by a person who was a coconspirator of the party during the course, and in furtherance, of the conspiracy. …

§ 90.803(18), Fla. Stat. (2019); *compare Symonette*, 100 So. 3d at 183-84 ("The text messages were authenticated and constitute admissible hearsay evidence because they were admissions, or the defendant's own statements offered against him. § 90.803(18), Fla. Stat. ….").

Regarding the borrower's statements that the property contained two units, the borrower made those statements while he attempted to cross-examine the appraiser, before he was sworn as a witness during his

14

case-in-chief. After the borrower was sworn as a witness, the borrower did not repeat his earlier unsworn statements that the property contained two units. *See, e.g., Addie v. Coale*, 179 So. 3d 534, 535 (Fla. 4th DCA 2015) ("[T]he trial court departed from the essential requirements of law by making limited findings of fact based upon unsworn statements made during a hearing.").

Even if we were to accept that the circuit court, in a non-jury trial involving a pro se party, was willing to treat the borrower's oath as applying to the borrower's pre-oath statements that the property contained two units, the borrower's statements nevertheless lacked any foundation as to their veracity. The borrower stated, during his cross-examination of the appraiser, "I have the city of Fort Lauderdale, code enforcement, everybody, I know all of those people. This was perfectly legal, the owner … that sold me this home -- it's a perfectly legal home." Unfortunately, the borrower did not produce a code enforcement official or other witness with personal knowledge of city zoning regulations who could reliably rebut the appraiser's testimony that, legally, the property contained only one unit.

Further, the borrower's testimony that he bought this property and others in the neighborhood for no less than $200,000 each is irrelevant. *Vantium Capital* stands for the proposition that the deficiency amount is determined by comparing the foreclosure judgment amount to the fair market value at the time of the foreclosure sale. While the borrower indeed may have paid more than $200,000 for the property during the housing market boom in early 2000s, the property's value may have depreciated significantly when the housing market went bust in 2008.

## *Conclusion*

Based on the foregoing, the circuit court lacked competent substantial evidence upon which it could have based a judgment in the borrower's favor. Thus, we reverse the circuit court's final judgment and, as the appellant requests, remand for a new trial on the appellant's deficiency action.

*Reversed and remanded for new trial.*

CONNER and KLINGENSMITH, JJ., concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**

15